# WHEELING

Harvey Coal and Coke Co. *v.* Dillon, Tax Commissioner.

Submitted May 26, 1905.    Decided June 16, 1905.

| 59 | 605 |
|---|---|
| e 60 | 365 |

| 59 | 605 |
|---|---|
| j62 | 157 |
| 62 | 172 |
| 62 | 179 |
| f62 | 349 |

| 59 | 605 |
|---|---|
| d65 | 432 |

1. Taxation—*Mining Lease—Chattel Real—Assessment to Lessee.* ·

   A sealed writing witnesses that "the lessors do demise, let and lease for coal mining and coke manufacturing purposes for a period of thirty years" * * * a tract of land; and that the lessors "do also grant unto the lessee the sole and exclusive right and privilege of mining, shipping and selling the coal from the above leased premises * * and the right to erect and use all buildings and structures necessary for the purposes of mining, coking and shipping the coal and coke;" and also that "it is expressly agreed between the respective parties to this lease that if at the expiration of the said period of thirty years, all of the available merchantable coal which can be profitably mined, and which is hereby let to the lessee for that purpose, has not been mined and removed, then the lessee shall have the privilege of an extension of this lease upon the same terms and conditions as those hereinbefore set forth, for a reasonable additional time until the whole of said coal can be so mined and removed." The writing provided for a rent or royalty to the lessors of ten cents a ton for all coal mined, and also contained a clause of forfeiture for noncompliance by the lessee with the covenant of the writing. *Held*, that this writing created a lease, a chattel real, taxable to the lessee under chapter 35, Acts of 1905. (p. 609.)

2. Same—*Double Taxation.*

   Chapter 35, Acts of 1905, in its taxation of chattels real, is not in violation, as double taxation, or otherwise, of the State Constitution. (p. 633.)

3. Constitutional Law—*Due Process of Law—Equal Protection of Laws—Taxation of Lease as Personalty.*

   Chapter 35, Acts of 1905, is not in violation of amendment 14 of the National Constitution, as wanting due process of law, or denying equal protection of the law. (p. 638.)

Appeal from Circuit Court, Fayette County.

Bill by the Harvey Coal & Coke Company against C. W. Dillon, tax commissioner, and others. Decree for defendants and plaintiff appeals.

*Affirmed.*

St. Clair, Walker & Summerfield, Brown, Jackson & Knight, Vinson & Thompson, Rucker, Anderson & Hughes,

SHEPPARD & GOODYKOONTZ, and JOS. H. GAINES, for appellant.

C. W. DILLON, MOLLOHAN, McCLINTIC & MATHEWS, and GEO. C. BAKER, for appellees.

BRANNON, PRESIDENT:

The Harvey Coal and Coke Company, a corporation, presented to the Honorable W. R. Bennett, judge of the circuit court of Fayette county, a chancery bill setting up that on the 20th of May, 1893, it made a contract with Morris Harvey and others for the purchase of all the coal in the Sewell seam in certain land, together with the right to enter upon the surface and use so much of the surface as might be required in mining, for which the company was to pay Harvey and others ten cents per ton for all coal mined; that it had actually developed the coal mine and was engaged in mining coal and making coke on the land. The bill complains that under certain legislation enacted in 1905 for the taxation of personal property C. W. Dillon, State Tax Commissioner, had issued such instructions to B. E. Bare and S. T. Carter, assessors of Fayette county, as would require them to assess said mining property under the head of chattels real, and that the assessors would assess it, and praying that said commissioner and assessors be enjoined from making such assessment, on the theory that it was unwarranted by law. The court sustained the demurrer to the bill, and dismissed it, and the plaintiff appeals.

The deed from Harvey and others to the plaintiff contains the following language: "That the lessors do demise, let and lease for coal mining and coke manufacturing purposes for a period of thirty years from and after the first day of January, 1893, the following tract or body of land lying." And the lessors "do also grant unto the lessee the sole and exclusive right and privilege of mining, shipping and selling the coal from the above leased premises from the said Sewell Seam, and the right to erect and use all buildings and structures necessary for the purposes of mining, coking and shipping the coal and coke therefrom and for all other purposes connected with or necessary for the free exercise and enjoyment of the privilege above granted or demised." "It is expressly agreed between the respective parties to this lease that if, at the ex-

piration of the period of thirty years, all of the available merchantable coal which can be profitably mined, and which is hereby let to the lessee for that purpose, has not been mined and removed, then the lessee shall have the privilege of an extension of this lease upon the same terms and conditions as those hereinbefore set forth, 'for a reasonable addition of time until the whole of said coal shall be so mined and removed. And it is further mutually agreed and understood that an abandonment of said premises by said lessee for a period of one year and a failure to pay royalty as hereinbefore provided for that period, then said lessee shall forfeit all right to said premises." The question of equity jurisdiction was waived, and is not considered.

This is a very important case. It is vastly important to the State, as it involves large revenue imposed by recent legislation, and the construction and even validity of that legislation. The Tax Commissioner claims that there is a value of $200,000,000.00 in leaseholds in this State, which has never been charged with taxes. That these leaseholds involve great value is not denied. So also it is of great importance to the owners of leaseholds, as it imposes upon them taxation. Able and elaborate oral and printed arguments by distinguished counsel demand that we write a perhaps too lengthy opinion, as well also does the gravity of the case.

As to the State's power of taxation. In *Loan Association* v. *Topeka*, 20 Wall. 655, it is asserted that "The power to tax is the strongest, the most pervading, of all the powers of the government, reaching directly or indirectly to all classes of the people. It was said by Chief Justice Marshall in *McCulloch* v. *State of Maryland*, 4 Wheaton 431, that the "power to tax is the power to destroy." "The power to impose taxes is one so unlimited in force, so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it." Justice Field said in *State Tax on Foreign-Held Bonds*, 15 Wall. 319, as follows: "It may touch property in every shape—in its natural condition, in its manufactured form, and in its varied transmutation—it may touch business in the almost infinite forms in which it is conducted—in professions, in commerce, in manufactures, in transportation." Cooley on Taxa-

tion, 9, says: "Everything to which the legislative power extends may be the subject of taxation, whether it be person or property or franchise or privilege or occupation or right. Nothing but special constitutional limitation from legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall select it for revenue purposes; and not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limitation, and may be carried even to the extent of exhaustion, thus becoming in its exercise a power to destroy."

In May or June, 1905, the Supreme Court of the United States decided the case known as the New York Franchise Tax Case, and sustained the constitutionality of an act taxing the franchises of corporations. The case asserts again very wide powers of taxation in the states. I have not the text of the case. *People* v. *Tax Commissioners,* 25 Sup. Ct. R. 705. In it Justice Brewer delivered the opinion holding that the intangible assets of a corporation are subject to taxation, and that corporations owning franchises must contribute their share to the expense of government. Justice Brewer said in delivering the opinion for the court: "We had occasion to review this subject in the Adams Express case versus Ohio, where we said: 'In the complex civilization of today a large proportion of the wealth of a community consists in intangible property, and there is nothing in the nature of things, or in the limitations of the federal constitution, which restrains the state from taxing at its real value such intangible property. It matters not in what the intangible property consists, whether privileges, corporate franchises, contracts or obligations. It is enough that it is property which, though intangible, exists, which has value, produces income, and passes current in the markets of the world. To ignore this intangible property, or to hold that it is not subject to taxation at its accepted value, is to eliminate from the reach of the taxing power a large portion of the wealth of the country."

The Constitution of this State gives the legislature power, indeed, a mandate, to "tax all property, real and personal." Therefore, the question is material, Does the deed in this case vest what is in law property in the Harvey Coal Company? The very suit in itself is a concession by the company

that its right under said deed is property, because that suit is to defend that property against taxes. But aside from such concession, it is quite plain that the Company's right is a property right. Anything capable of beneficial ownership is property. In this instance a valuable right arising by contract; a right to take coal from the body of land, using the land for that purpose, and convert it into saleable coal, a commodity of great commercial value. "Man's rights in respect to things constitutes property." 2 Minor's Inst. 1. The Company's right to produce commercial, merchantable coal for market and manufacture coke is a right in respect to the land, and that mere right, under the contract, is property. The sole and despotic dominion which one man claims and exercises over external things of the world, in total exclusion of the rights of any other, is property. 2 Bl. Com. 2. The right to possess, use, enjoy and dispose of a thing is property which is in itself valuable. 4 McLean, 603; Bouvier L. Dic. word "property." A mining right in government land is property in the miner, and property of value, and may be taxed by the state, and the state may sell it for taxes. *Forbes* v. *Gray*, 94 U. S. 762. I repeat that plainly the right vested in the Coal Company, and being actually exercised, is property, and the legislature has full power to tax it in some manner. Except as restrained by the Constitution the State may tax without limit as to subject or rate. We need not discuss the power to tax this property, as the Constitution gives it. In what manner shall it be taxed, as real or personal property? The legislature has enacted that all property, real and personal shall be taxed. The Tax Commissioner claims in behalf of the State that this mining right is personal property, and of that kind called by the law chattels real, and as section 61 of chapter 35, Acts 1905, defines "personal property" as including chattels real, and other sections direct their taxation, his direction to assessors is to tax chattels real as personalty, and the assessor will charge the said right of the Company. The company claims that its right is not a chattel real, not personalty, but real estate, and cannot be charged to it as personal property, but can be charged only as real estate to the owner of the land itself, and that the charge of the tax to the owner covers, includes the right of the company. As the act declares that personal

property shall be taxed, if the Company's right is a chattel real, which always has been regarded in law as personal property, briefs in the case argue that that is alone a warrant to charge the leasehold; but if it is a chattel real, we do not have to pass on that question, because the statute, as we hold, expressly taxes chattels real. What then is the character of that property conferred upon the defendant by its deed? A freehold is an estate for life or in fee; a chattel real for a less estate. Volume 22 Am. & Eng. Enc. of Law, 2 Ed. defines it thus: "An estate in land other than one for life or inheritance." Tucker's Com. 2, p. 305, defines chattels real thus: "Chattels real," saith Sir Edward Coke, "are such as concern, or savour of the realty: as terms for years of land, wardships in chivalry (while the military tenures subsisted,) the next presentation to a church, estates by a statute merchant, statutes-staple, elegit, or the like; of all which we have already spoken. And these are called real chattels, as being interests issuing out of, or annexed to, real estate: of which they have one quality, viz., immobility, which denominates them *real*, but want the other, viz: a sufficient legal, indeterminate duration; and this want it is that constitutes them *chattels*. The utmost period for which they can last is fixed and determinate, either for such a space of time certain, or until such a particular sum of money be raised out of such a particular income; so that they are not equal in the eye of the law to the lowest estate of freehold, a lease for another's life." See 7 Cyc. 123. Bouvier's Law Dictionary says: "Real chattels are interests which are annexed to or concern real estate, as a lease for years of land. And the duration of the lease is immaterial, whether it be for one or a thousand years, provided there be a certainty about it, and a reversion or remainder in some person." A lease is defined by Bouvier to be "A species of contract for the possession and profits of lands and tenements either for life or for a term of years or during the pleasure of the parties. A conveyance by way of demise always for a less term than the party conveying has in the premises. One of the essential features is that its duration must be for a shorter period than the duration of the interests of the lessor in the land, for if he disposes of his entire interest it becomes an assignment, and is not a lease. In other words, the granting of a lease

always supposes that the grantor reserves to himself a reversion." In 18 Am. & Eng. Enc. of Law, (2 Ed). 597, we find a lease defined thus: "A lease is a contract for the possession and profits of lands and tenements on the one side and the recompense or rents on the other, or in other words, a conveyance to a person for life, years or at will, in consideration of a rent, or other recompense."

Try this property or right under these definitions. It is surely a lease, and therefore a chattel real. The fee owner carves out of his fee a particular estate and vests it in another. The coal having been developed, then, if not before, an actual estate vested as to the coal right, an entity, a distinct entity, a separate property from that remaining in the lessor. The instrument of conveyance gave certain title to the Coal Company, gave it an intangible right, that is, a right to produce personal property, a product of the land. This right savored of the realty, depended on it, was annexed to it, and so far answers the definition of a chattel real, which is personal estate. We say that the estate of the coal company is a lease for years, and if so, by all authority, is a chattel real. The parties thought they were making a lease for years, intended to do so, so far as we may judge from legal language, for they used the words of lease signification, "demise, lease and let." The instrument calls itself a lease and calls the parties lessor and lessee. But take the document itself. It leases the tract for "a period of thirty years," not forever. It has a specific term, gives an estate less than the fee of the lessors, leaving the whole tract at the end of the term to revert to the lessors disencumbered and freed from the leasehold estate, thus meeting another element in the definition of a chattel real, that is, that it must be of less duration than the estate of the lessor. In this case all the features of a lease for years are present, leasing language, a term, a rent, forfeiture and reversion. A grant giving right to mine lead was held to be a lease in *U. S.* v. *Gratiat*, 14 Pet. 538—pointed authority in this case. The case holds that, "The legal understanding of a lease for years is a contract for the possession and profits of land for a determinate period, with the recompense of rent. It is not necessary that the rent should be in money. If reserved in kind, it is rent in contemplation of law." And I notice that the very language of the lease is

that it lets the coal. As the court said in *Reynold* v. *Hanna*, 55 Fed. 783: "In the present case the term is sufficiently definite. Subject to its sooner termination under the forfeiture clause of the contract, it is to continue so long as there is coal that can be practically mined. This constitutes a *determinate* period." The limit of thirty years gives it a definite period; but the argument is made that the lease says that if the seam of coal should not be fully taken out within that time, then the lessee should have "the privilege of an extension of the lease." Now, this does not give a forever extension to last as long as the lessor's estate; it is an extension for a reasonable time, that is, only such time as reasonably necessary to remove the coal. The land was not to be under servitude forever. And what seems to me to answer this argument is, that the extension is merely an *option*, on the part of the company, not an extension at all events, not a further estate at all events. This extension clause does not make the estate a freehold, and cannot convert the grant from the character of a lease for years to an enduring estate. There comes a time when the right of the coal company must end, leaving the fee in the lessors relieved of the leasehold, even if there shall be an extension. The coal must exhaust. I repeat that the extension clause does not take from the estate the character of a lease. In *State* v. *South Penn Oil Co.*, 42 W. Va. p. 102, this Court said: "Nor does the addition to the term of years of the clause 'and as long as oil or gas may be found in paying quantities,' give it such indefinite duration as to make the interest freehold in quantity; for after the expiration of the term prescribed the lessee, having the option to continue to pump if he can find oil in paying quantities, becomes a tenant at will, which may become a tenancy from year to year on the terms of the lease, but it is not a freehold, because its extension after the end of the term prescribed depends upon his own act, the exercise of his own will; so, according to the terms of the instrument, that is as large an interest as the words will bear. Such superadded possibility of extended duration constitutes no part of the term of years prescribed, but is a new interest in the nature of an option to become tenant at will or from year to year by the exercise of his own volition when the fixed term of years shall have expired. He has but a contract with the owner of

the land for the possession. He is not seized of any part of the ownership of the land by any title." "A grant of land to mine for coal so long as there was coal to mine, with leave to take under certain conditions all the coal in the land, and also containing covenants and a provision of forfeiture in case of noncompliance, was construed a lease." *Gartside* v. *Outley*, 58 Ill. 210.   A lease for ninety-nine years, renewable forever, by common law is only a chattel. 5 Am. & Eng. Enc. of Law, 1024.   The grant is only until all the coal be mined—in character like a lease until out of the profits a debt shall be paid, and that is a chattel real by the definitions above given. "It seems to be regarded as essential to a good lease for years that it should be either for a certain period, measured by years, or for a period uncertain only from the circumstance that it may be determined before its natural expiration by some event, or by having a purpose which of itself serves to ascertain the length of time for which the premises are to be held." 1st. Washburn, R. P. sec. 211. The present is a mere lease under this authority.

It is said, however, that when the coal shall be exhausted there will be nothing to revert to the land owner, and that this repels the idea that the right of the company is a chattel real, as there must be a reversion or remainder to make a chattel real. The answer is that the grant is not of the very coal. The phrase of the deed is not that. It *leases* the coal. It lets the tract itself to be used for a special limited purpose. It gives an intangible, incorporeal thing, a right to take actual possession of the tract and use it so far as necessary to take coal and make coke. When the term in this intangible right savoring of the land ends that is at an end, not the mere coal. There are many cases bearing on the subject, and somewhat clashing. In this, as in most other cases, there is a wilderness of decisions, and it is impossible in an opinion to attempt to analyze them. The best a court can do in the great volume of conflicting cases is to select those which, in its judgment, best suit the particular case as a basis of decision for that case. An agreement conveying all coal in a tract with right to remove for fifty years was termed a lease. *Hyatt* v. *Vincennes*, 113 U. S. 408: "The possession by the citizen of, and his possessory interest in, the public land for mining, agricultural, or other purposes, constitutes a species

of property recognized by law, and is a subject of taxation by the State." *People* v. *Shearer*, 30 Cal. 645. "An instrument which conveys premises to the grantee for the purpose of mining coal 'so long as there is coal to mine thereon,' and providing for a payment of bank rents therefor, and with a forfeiting clause in case of noncompliance with the terms of the instrument is a lease." *Gartside* v. *Outley*, 58 Ill. 210. In *Haywood* v. *Fullmore*, 32 N. E. 574, the construction was involved of a writing which acknowledged receipt of one hundred and seventy-five dollars in payment of a sand bar for the year 1890, and recited that it was for the exclusive right to all gravel and sand for that year, and excluded all other parties from the premises.    The question was whether it was a lease, a license, an executory agreement or any interest in the sand bar.    The court said: "A lease may not only confer upon the lessee the right to the occupancy of the leased premises, either generally, or for the land, or for some specific purpose, or in some specific manner or the right to occupy and cultivate and remove products of cultivation; but it may confer upon him the power to occupy and remove a portion of that which constitutes the land itself. Similar and common examples of such leases are those authorizing a lessee to quarry and remove stone, to open mines and remove ores, minerals, coal, or to sink wells for procuring and removing petroleum and natural gas.    The power to execute leases for such purposes and the fact that the instrument by which such interest in land is granted may be in all essential particulars a lease, will not be questioned.    Manifestly there can be no valid reason why a lease may not confer the right to remove a portion of the soil, or of sand and gravel found upon the surface of the land, as well as to remove stone or iron ore or mineral coal found either upon the surface or beneath it.    In our opinion the writing in question contains all the essential elements of a valid lease." In this case the Indiana court did not think that the fact that a part of the substance of the soil was to be removed gave it any other cast than that of a lease. It likened it to an agricultural lease.    I see no reason to discriminate an agricultural lease from this lease, so far as that the one is as much a lease, a mere chattel interest, as the other. In *Reynolds* v. *Hanna*, 55 Fed. it is held as follows: "By an agreement between the executor of an estate and a coal

company the executor granted exclusive right to enter upon, mine, and remove the coal in the premises and the right to occupy and use so much of the surface as would enable the company to conduct mining operations, and to make use of so much of the timber as might be necessary in mining; the company agreed to mine the coal for a certain compensation, a royalty, and if the company failed to make payments this lease may, at the option of the first party be declared forfeited, and it was held that the agreement was a lease and the royalty was a rental." That is much like this case. A memorandum leasing all the coal in a parcel of land was held to be a lease in *Genet* v. *Delaware*, 136 N. Y. 593. An instrument conveying an interest in land for a certain time with the exclusive right to mine, the grantee paying a rent in ore, was held to be a lease in *Lehigh Zinc Co.* v. *Bamford*, 150 U. S. 665; 14 Sup. 219. In *Bluestone Coal Co.* v. *Bell*, 38 W. Va. 297, a right to mine coal was held to be a lease. The court in *Genet* v. *Delaware*, 136 N. Y. 593, declared that the instrument did not convey the coal itself, and that its subject matter was mineral product, not land. And in *Bowyer* v. *Seymour*, 13 W. Va. 12, an instrument read: "Doth lease all the mineral, coal and iron ore underlying the lands," without fixing any term and providing for a royalty rent to the lessor was held to be a lease, treated only as such. A notable case is that of *State* v. *Moore*, 12 Cal. 56. The case was decided by Judges Terry, Baldwin and Field, the last afterwards a Justice of the Supreme Court. The case was maturely considered. In California mining claims were the property of the United States and not subject to taxation. The Court however held that the interests of the occupants of the mining claims were a distinct species of property, severable from the mining claim of which it was a part, and that being so severable it could be assessed and taxed as the property of the owner. It was claimed that inasmuch as the mining claim, to which the miner's rights were related, was exempt that the occupant's right must also be exempt. The syllabus is as follows: "The interest of the occupant of a mining claim is property, and under the Constitution it is in the power of the legislature to tax such property. The whole course of legislation and decision in this state has recognized a qualified ownership of the mines in private individuals. The

term 'property in lands' is not confined to title in fee, but is sufficiently comprehensive to include any usufructury interest, whether it be leasehold or mere right of possession. Several persons may have, in the same land, a property which is subject to taxation, and it is not perceived that the fact that the property of the government is exempt from taxation affects the right to tax the interest which individuals have acquired in the same property. Exemption from taxation is a privilege of the government, not an incident to the property. There is no force in the supposition that the value of a mining claim, which depends upon the amount of the metals it contains, must necessarily be left to conjecture. The universal standard of value is the amount of money that can be realized by a sale of the property, and this will apply as well to mining claims as to lands." That case also said as just stated, that the instrument created a lease and that "it is not an absolute grant of all the coal in the land." See *Moore* v. *Miller*, 8 Pa. 283. In Kentucky assessment of a leasehold estate was held to be valid. In *Wilgus* v. *Commonwealth*, 9 Bush 556, it is held: "A lease for ninety-nine years, with a provision for perpetual renewal, is personalty and is not to be listed for taxation as real estate." The Code of Alabama required that each piece of land, and each separate or special interest in it, such as mineral, should be taxed to separate owners. It was held that a lease for years for the purpose of cutting saw logs was such special interest which should be taxed. *Freeman* v. *State*, 115 Ala. 208.

Mining leases and their legal effect have often been before the courts and have generally been construed to be leases creating leaseholds, and being for a term of years and not freeholds, constituting chattels real. 5 Am. & Eng. Enc. of law (2 Ed.) 1024; *U. S.* v. *Gratiot*, 14 Pet. 526; *Consolidated Coal* v. *Peers*, 150 Ill. 344; *Pelton* v. *Minah*, 11 Mont. 281; *Young* v. *Ellis*, 91 Va. 297; *Ganter* v. *Atkinson*, 35 Wis. 48.

Those cases show mere leases, and I hold that being leases they are chattels real. But the Coal company contests the position that it has a lease taxable as personalty, as chattels real. It says that the deed shows *a sale* of the coal, and that the coal itself is taxable as real estate to the owner of the fee, and that the charge of the land to the owner of the fee covers

and pays taxes also for its coal.  I have just cited a California case showing that the lease does not convey the coal. The plaintiff bases its theory that it does not own a chattel real taxable as personalty to it on certain Pennsylvania cases, and cites them with confidence.   A leading Pennsylvania case is *Sanderson* v. *Scranton*, 105 Pa. St. 469, holding that an agreement leasing "all the coal beneath the surface, with right to remove the same," with no term fixed in the instrument, it saying that "the true meaning of this lease is to be perpetual until all the coal under the tract of land herein described is mined," conveyed an interest in land.   The court gave emphasis to this clause, saying that the lease was not for years, life or will, and therefore held it a conveyance of the very coal. In *Montooth* v. *Gamble*, 123 Pa. 240, the deed said, "sell and convey unto the parties of the second part all the bituminous or stone coal in or under" a tract. So in *Lazarus' Case*, 145 Pa. St. 1.   Such is not our case. The deed in our case grants the tract for a specific purpose, that is, with the right to mine coal, and make coke, and does not grant even the coal itself; whereas the Pennsylvania cases show deeds granting, not the land, not the tract, but all the coal.   The court of appeals of New York in *Genet* v. *Delaware Coal*, 136 N. Y. 602, referred to the Pennsylvania cases and said:   "Whatever we may think of the general doctrine one thing about it is quite obvious.   It applies to a case, and only to a case, in which by the terms of the agreement and in contemplation of the parties the whole body of the coal, considered as of cubical dimensions and capable of descriptive separation from the earth above and around it, and as it lies in its place, is absolutely and presently conveyed.   The thing sold must be such that it can be identified as land and severed as land from the estate of which it forms a part. Every case upholding the doctrine which I have been able to examine has that marked characteristic," and citing the cases. The court held a deed saying "doth hereby lease all the coal contained in" a tract to be a lease and that it did not operate as a conveyance of the coal veins or strata.

It seems that the above Pennsylvania cases holding that an oil or coal lease conveys an interest in the land conflicts with other Pennsylvania cases holding them to create a chattel interest saleable on execution.   In *Brown* v. *Beecher*, 120 Pa.

St. 590, we find this point of law decided: "A demise of land for a term of years, 'with the sole and exclusive right and privilege during said period of digging and boring for oil and other minerals, and of gathering and collecting the same therefrom,' conveys an interest in the land, a chattel real, but none the less a chattel." See Desty on Taxation, 176. Grant, for argument, that it is the sale of an interest in land, still that Pennsylvania case, which cited others to the same effect in the syllabus, says that it is none the less a chattel real. Thus, even if it conveys an interest in land, it is a chattel interest, and this blasts the inference sought to be made from the Pennsylvania cases that this leasehold passes realty, an interest in the land, and must be taxed as such, and that to the fee owner. We can find plenty of authority that a state may tax land as personalty, or leasehold as personalty or realty, as its statutes may prescribe. This being a leasehold by common law, and being personal property by common law, is enough; but in addition the statute of 1905 declares that it shall be taxed as chattel real. And the Pennsylvania cases, which counsel for the plaintiff cite to show that this lease or document conveys the very coal or an interest in the land, are not consistent with other Pennsylvania cases. *Venture Oil Co.* v. *Frett*, 152 Pa. St. 451, involved a deed which "granted, demised and let, for the sole and only purpose of mining and excavating for petroleum," a tract of land for royalty for twenty years, and the court carefully considered its character and said: "The contract does not purport to be a sale of all the oil under the farm, but a grant of the right to mine and remove oil for a fixed period." If oil should be found, "the contract took effect as an oil lease, and the lessee had a right to operate the land for the production of petroleum." So in *McNish* v. *Stone*, 152 Pa. St. 457, foot note, the deed said "do lease unto the party of the second part the exclusive right to bore or mine for seneca oil or other minerals" on described land for ninety-nine years. The court said that the contract was "not a grant of the mineral in place or under the land," and that if oil was found "the right or interest is an incorporeal one." The court held that it was a lease. See also *Funk*, 53 Pa. St. 229; *Duffield*, 129 *Id.* 94; *Thompson*, 101 *Id.* p. 232. I have already cited numerous cases contrary to the Pennsylvania

cases showing that mining contracts like that involved in this case are held to be leases, not sales. The West Virginia cases held them leases. The case of *Boyer* v. *Seymour*, 13 W. Va. 12, already cited, attests this, and also *Bluestone Company* v. *Bell*, 38 W. Va. 297. The last case involved a lease of ninety-nine years. A contract leased all coal under tracts of land with right to go on the land to develop coal and also cut timber for mining use for ten cents per ton of coal payable to the lessor. It fixed no term. It was treated as a lease, a chattel real, and for that reason right to tax it as realty to the lessee was denied. The company lessee had done nothing under the lease. No estate had vested in it. It was not treated as *a sale* of the coal but as a mere lease, and the coal chargeable to the land owner. If it was a sale, why not charge the lessee? It was expressly decided that because it was not a conveyance of a freehold in the coal, but a mere lease, it could not, under the revaluation act of 1891, be charged to the lessee; whereas if it had been a sale outright of the coal it would be otherwise. This is strong to show that it was, though no term was fixed, not a sale. It was declared a lease in words. The land could be chargeable only to one holding a freehold for life or in fee. *U. S. Coal Co.* v. *Randolph County*, 38 W. Va. 201. A lease of a tract for mining coal, for ten cents per ton royalty, was treated as a lease in *Coaldale Co.* v. *Clark*, 43 W. Va. 84. Take the case of *State* v. *South Penn Oil Co.*, 42 W. Va. 80. It holds that a privilege, liberty or license to search and explore the land for oil or other minerals, coupled with a grant to dig and remove them and convert them to the grantee's use, if in fee or for life, creates an incorporeal freehold right in the real estate which must be assessed to the grantee separately from the land, if minerals be found or produced, "but such privilege, liberty or license, and such interest, if limited to a term of years, are not held and owned as the whole or a part of the freehold ownership, within the meaning of the act. and should not be separately assessed to the mining lessee on such land books." In *Peterson* v. *Hall*, 50 S. E. p. 606, we again said, the oil lessee "had no estate in soil or minerals." The act referred to was the revaluation act of 1891. This South Penn case shows (1) that a lease of a tract for mineral development, for life, fee or term of

years is not a sale or conveyance of the land or mineral, but confers an intangible or incorporeal estate, in connection with the land, a right issuing out of it. And (2) that if for life or fee it was taxable to the grantee of that incorporeal right, because the act of 1891 provided that if minerals were owned by any one exclusive of the surface, they should be charged separately from the surface to the one owning them. The lessee was by the act held to be owner. But if the mineral right were less than for life, the mineral should be considered still as part of the land, and when the land was charged should not be charged to the lessee; that it was not real estate and could not be charged to the grantee, because land by our law could only be charged to the freehold owner, and this shows that it was, not a sale or transfer of the very mineral, but of only a right to use the land to convert the mineral to personalty by severance from the body of the land. The case pointedly says that the coal itself was not sold. The court said: "A lessee, in the proper sense, may, by contract, have right to possession, and the possession, of the coal, as a part of the thing to which the ownership applies, but no part of the thing owned is vested in him; and the statute contemplates a case in which the other party has become the owner of the mineral or coal and holds it as such owner. And in that common law sense, adopted by the general assessment law, the ownership to be assessed cannot be divided into parts less in quantity than freehold." The statute charged land only to the freehold owner. Just as I have once said above in this case the Coal Company has right of possession of the coal, and of the land to mine that coal, but no title to the very coal or land—only a right to coal in connection with the intangible right to produce coal, to make it personal property for market. These leases, in the plain import, mean that the surface owner owns the whole land and everything in place in it, and that the lessee simply has a usufructuary right in connection with the land, right to use the land for a purpose, a terminable right, which may be long or short in years, that is a mere chattel real, issuing out of land, but constituting a distinct estate, a valuable one as property, and which is property, and therefore taxable, if the state see proper to do so. It must be a mere leasehold, a chattel real. Not being a freehold, and being incorporeal, a mere right to use the land for a purpose, what can it be but

a leasehold for years? It must be something, in the legal eye; it cannot be nondescript. The court in the case referred to last did not say whether or no that chattel real could be taxed as personal property under the statute providing that all personal property should be assessed annually, as that statute was not involved in the case, but only the act of 1891 for the revaluation of land. And note that the court's opinion on page 104 uses this plain and emphatic language, which we borrow and now announce as law, though it was then *obiter*, namely: "If the State sees fit to tax this kind of personal property, then it can be distrained and sold like other personal property." As further showing that such a lease is not a sale of the coal itself, but confers a leasehold for years taxable as personalty, I will add that the oil and gas leases used in this state demise a tract of land for the purpose of developing and taking oil and gas for a fraction of the oil as royalty, and for a fixed sum per gas well, to the lessor, for a specific term of years and as much longer as oil and gas can be produced in paying quantities, and they have always been treated and deemed to be leases, not grants of the minerals in specie. *Boyer* v. *Seymour*, 13 W. Va. 12, was a lease for all coal in a tract with no definite term. It was treated as a lease, just as an agricultural lease. What the difference? We have always thought that these instruments, whatever their form, since they only give right to produce mineral out of the fee owner's soil, leaving him to all intents still the owner of the land and all minerals still in the ground, though the land may be leased, were simple leases, conveying chattel interest, and we believe that many cases give that cast and stamp to them, and do not consider them as conveyances of the body of the coal or oil, when not in fee. *Williamson* v. *Jones*, 39 W. Va. 231; *Betman* v. *Harness*, 42 W. Va, 433: *Williamson* v. *Jones*, 43 W. Va. 562; *Wilson* v. *Youst*, 43 W. Va. 826; *Steelsmith* v. *Gartland*, 45 W. Va. 27; *Trees* v. *Eclipse Co.*, 47 W. Va. 107; *Lawson* v. *Kirchner*, 50 W. Va. 344; *Lowther* v. *Miller-Sipley Co.*, 53 W. Va. 501; *Haskell* v. *Sutton*, 53 W. Va. 206; *Peterson* v. *Hall*, 57 W. Va. 535 (50 S. E. 603). These leases have even after production been held to still leave the oil and gas *in situ* in the ownership of the lessor, and not to be taxed to the lessee as real estate; I say as real estate. This shows

that these instruments do not convey the oil and gas. The cases have held that they cannot be taxed as realty; but they do not pass on their taxability as personal property. Our tax laws long have provided that all personal property shall be taxed; but these leases for coal, oil and gas have never been taxed on the personal property book in the past, and the question of their taxability has never arisen. Until chapter 35, Acts 1905, the tax laws did not include chattels real as specific subjects of taxation. Various decisions like *Peterson* v. *Hall*, 57 W. Va. 535 (50 S. E. 603), hold that coal, oil and gas in place were taxable to the surface owner, or rather not separately taxed, not taxable to the lessee, and thence it is urgently pressed in argument that the decisions have excluded all idea of taxation of them either as realty or personalty to the lessee. I repeat that the question of taxation of the leasehold, as such, has never been up under former laws. In *Carter* v. *County Court*, 45 W. Va. 806, a tax charge was made on ninety producing oil wells on the personal property tax book, and it was held illegal taxation. It was said to be an assessment on future production of oil, and the court regarded it as a tax *on oil* in its place still in the earth, and as all cases had held such oil real estate, there was no law to assess it as personalty. Now, this was not an assessment of that intangible chattel real, the leasehold. That case is no authority against this tax act of 1905. Whether the distinction seems refined or not, it is real in legal thought, for a leasehold is not the wheat or corn produced under the right conferred by the lease; the lease is a thing apart from the commodities produced under the right conferred by it. The common law has always recognized chattels real as distinct property, taxable if the legislature should so direct, and therefore this distinction is not new or unheard of or refined; I mean the discrimination of the leasehold from the fee ownership out of which it issues. The law has always recognized it. A chattel real is a thing of property, in and of itself, known to the law through centuries, and is not the coal, oil, wheat or corn produced from the soil by virtue of the right arising from it. They are realty while attached to the land, personalty when severed. The leasehold is an entity *per se*, not an empty shadow or gauze: So, the case of *Carter* v. *Tyler County*, and other cases holding that oil in place is in-

cluded in the charge of the land to the owner, and cannot be charged to the lessee of oil right, do not solve the question, whether, under the tax law before that of 1905, such a lease was taxable under the general direction of the statute taxing all personal property. Before 1905 the statute did not expressly charge chattels real as personal property, as does the act of 1905. True, the Code, chapter 13, section 17, clauses 15 and 16, says, "The word 'personal estate' or 'personal property' include goods, chattels, real and personal, money credits, investments and the evidence thereof." "The word 'land' or 'lands' and the words 'real estate' or 'real property' include lands, tenements and hereditaments, and all rights thereto and interests therein except chattel interests." This shows that chattels real were never land, but personal property. From these clauses it may be argued that chattels real were taxable as personal property, especially as chapter 29, section 48, taxed "All personal property." It may be so. We do not say, as we are not passing on the prior law. It may be said against the taxation of chattels real under the old law, that the clause quoted above making chattels real personal property is only applicable to the construction of statutes in general, and as the tax chapter does not in terms name chattels real for taxation those clauses do not apply. The Code before 1905, in chapter 29, section 61, relating to taxes, says that "the words 'personal property' as used in this chapter, shall include all fixtures attached to land, if not included in the valuation of such land entered in the proper land book; all things of value movable and tangible, which are the subject of ownership; and moneys, credits and investments, as defined in the following section." Acts 1904, page 56. Chapter 35, Acts of 1905, makes section 61 of chapter 29 of the Code read thus: "The words 'personal property,' used in this chapter, shall include all fixtures attached to land, if not included in the valuation of such land entered in the proper land book; all things of value, movable and tangible, which are the subject of ownership; *all chattels, real and personal*; all money, credits and investments as defined in the following section. The word 'land' or 'lands' and words 'real estate' or 'real property' include lands, tenements and hereditaments, and all rights thereto and interests therein, *except chattel interest and chattels real.*" It may be argued with

force that chattels real, not being "movable and tangible," and not being mentioned for taxation in section 61 of the prior law, were not taxable, as the rule of construction is that though certain words are given by the Code a general meaning in the construction of statutes, they would not have that meaning in construing a particular chapter or section which itself, for its own purposes, gives it a different or limited meaning. But we do not say as to this. We do say, however, that chattels real are in words made a subject of taxation by the letter of the act of 1905, on which this case turns. We cannot decide the case by decisions resting on a prior different statute.

Recurring to the contention that the deed in this case makes, not a chattel real, but a sale of the very coal itself, which is yet taxable to the surface only as realty, we are reminded of some of our own cases for authority for the proposition. *Wilson* v. *Youst*, 43 W. Va. 826; *Haskell* v. *Sutton*, 53 W. Va. 206; *South Penn* v. *McIntire*, 44 W. Va. 296; *Lawson* v. *Kirchner*, 50 W. Va. 344. Language is used in them incidentally to the effect that a lease allowing the lessee to remove oil "is in legal effect a sale of a portion of the land." That language began in *Wilson* v. *Youst*, as a borrow from a Pennsylvania case. See page 839 of 43 W. Va. It is only repeated in the later cases. Chief Justice Marshall long ago said, what has been accepted always since as a rule, that language in a decision must be interpreted with reference to the case in hand. Just whether such a lease was a sale of the very coal as part of the land was not in judgment in those cases, not necessary to the decisions. Standing alone that language might be construed to mean that the execution of the lease itself at once vested the mineral as part of the body of the land in the lessee; but an examination of these cases shows that this was not the court's decision, but the cases involving the right of a guardian or committee to lease the land of a ward or insane person, the court simply held that as under the operation of said leases the mineral would be taken from the land, and a portion of its body thus removed, it decided that such leases so operating to work a sale and severance of part of the land from the ward or insane person could only be made in the mode authorized by law, that is, under the statute for the

sale of land of persons insane or infant. Again, there are so many West Virginia cases, in which the very question as to what manner of estate such leases created was directly involved in which it was held that before finding the mineral no estate whatever passed, and that even after finding mineral that mineral itself in the ground, not yet brought to the surface, is vested yet in the owner of the surface. We must say that many of our cases settle that. Then, how can it be said that such leases impart ownership in the very coal in the lessee, if it remain in the surface owner? Will you make a distinction between coal and oil? Why? It was not made in *U. S. Mining Co.* v. *County Court*, 38 W. Va. 201. It is needless to say *Peterson* v. *Hall*, 57 W. Va. 535, (56 S. E. 603,) does not touch the question before us. It simply holds, like many cases, that a lessee under an oil lease has no taxable vested estate in the oil in place, but that if it be conveyed in fee it is to be taxed separately from the surface. It logically denies the claim that the lease is a sale of the oil itself.

It was argued at bar that land is assessed as a body as land, and not the estate in it; that there may be a life estate, after it another life estate, after it a reversion or remainder, sometimes a contingent estate; and that these are not each separately charged to the owner of each. That is true, and why? Because the statute has long provided that "as to real property, the person who, by himself or tenant, has the freehold in possession, whether in fee or for life, shall be deemed the owner for the purpose of taxation." Code 1899, chapter 29, section 40. Therefore the life tenant must pay taxes during his estate, and the remainderman or reversioner only when the particular estate ends. That may be claimed as a good reason why leaseholds in the past could not be assessed, the charge of the corpus representing and paying for all the estate in the land. But suppose the statute had provided for the assessment of the life estate to the life tenant and the fee to the remainderman. Surely the legislature could have done so. 27 Am. & Eng. Enc. of Law, 609. And as reflecting a sedate purpose to *tax all leaseholds* for minerals compare the acts, not of tax assessment, but of revaluation of 1891, chapter 36, section 4, of 1899, chapter 21, section 4, and of 1904,

chapter 15, sections 5 and 6. The acts of 1891 and 1899 required the commissioner "to ascertain and assess the fair cash value thereof (the tract) and in such assessment minerals, mineral waters, oils and gases underlying the surface. and the location of the land, shall be considered in ascertaining the value of such land in current money; and when mineral, mineral water, oil, gas or coal privileges or interests are held by a party or parties, or any company or association, exclusive of the surface, the same shall be assessed separately to such party or parties; company or association." Under that act of 1891, the same as 1899, this Court said that the minerals here meant were only freehold and the less leasehold was not separately charged, but the land must be charged to its owner. *State* v. *South Penn*, 42 W. Va. 80; *U. S. Coal Co.* v. *County Court*, 38 W. Va. 201. Remember that those cases were under the acts of 1891 and 1899, not under the assessment act of 1905. So *Carter* v. *County Court*, 45 W. Va. 811, and *Peterson* v. *Hall*, 57 W. Va. 535, (50 S. E. 603), were upon the same assessment act. They afford no guidance under later and different acts. The revaluation act of 1904 uses different language from the acts of 1891 and 1899. The legislature by the revaluation act of 1904, after requiring minerals to be considered in the valuation for taxes, said in section 6, "In case the whole or any interest in the minerals, mineral waters, oil, gases, coal, ore or timber, or any other assessable interest in real estate be held by any person other than the owner of the other interest in said real estate, the same shall be assessed separately in the name of the owner thereof." Now, here is a change and it speaks intent plain. It tells us that no longer can it be said as held in the cases above cited, that only freehold minerals are taxable separately, but the act says, "the whole of or any interest in the minerals * * * or any other assessable interest," shall be taxed to each owner, and a few months later came the act of 1905 taxing chattels real in very words several times repeated, and taxing them to their owner as personal property. This revaluation act of 1904, in connection with the assessment act of 1905, makes clear what the legislature means by chapter 35, taxing chattel real. Read both acts to get intent. The assessment act of 1904, chapter 4, section 54, still said that "As to real

property the person who by himself or his tenant has the freehold in his possession, whether in fee or for life, shall be deemed the owner for the purpose of taxation." Thence it is argued that still mineral estate must be taxed in the freehold estate, and that leases for mineral for less estate cannot be charged separately. That is true as to minerals in place. They are still included in the valuation of the freehold; they were always, and still are, included in the valuation of the land itself. But as to the distinct chattel real. It is not, and never was, included in the valuation of real estate. *State* v. *South Penn*, 42 W. Va. p. 99, says that the reassessment act did not relate to leases, but only to freeholds, and that the section providing that the freeholder should be deemed the owner related only to the life or fee estate; and on p. 101 we find that leaseholds could not be charged as real estate, because "a lessee, in proper sense, may by contract have right to possession of the coal, as a part of the thing to which the ownership applies, but that no part of the ownership of the thing is vested in him," that thing being the corpus and coal in place. The old law did not include leaseholds in the valuation of the land or mineral in place; neither does the new; but the new law charges chattels real as personal property. For the first time the new law selects them for taxation in words.

The real estate valuation act of 1904 required each separate interest to be valued for taxation, leaving it to the legislature to tax them as it might see fit. The tax assessment act of 1904 did not tax leaseholds separately in words, but the act of 1905 carried out the policy of separate taxation contemplated by the revaluation act of 1904, and directed them to be taxed separately as personalty. It is not now the constitutional or statute policy of this State, as is argued, to assess all that pertains to or grows out of land as land. The Constitution says that both shall be taxed, all property shall, what is land as land, what the law deems personalty as personalty. Constitution and statute taken together say so. The Constitution says all property real and personal shall be taxed. Still, without legislation, nothing can be taxed; but the legislature has enacted that real and personal property, including chattels real, shall be taxed; that any assessable interest in land shall be taxed to its owner. As above stated the statute has never in words required

chattels real to be separately assessed until the act of 1905. That makes them specific subjects of taxation. Never has there been a time when by common law a chattel real had not legal entity as an estate of value, a property, distinct from the body of land of which it savored, and therefore the State has indisputable power to tax it as such distinct property, By the very act of taxing it the legislature has given the chattel real, for purposes of taxation, distinct existence, if it had not had it before, and made it a tax subject. No matter how many estates or interests in land there may be the State can, if it chose, tax each separately. From law cited above, property in any form can be taxed. "The term property standing unqualified in a constitution with statutes designating subject of taxation includes both real and personal property, or estate, intangible as well as tangible rights of value." 27 Am. & Eng. Enc. of Law, 635; *Carroll* v. *Terry*, 4 McLean 25; *People* v. *Worthington*, 27 Ill. 171; *Primm* v. *Belleville*, 59 Ill. 142; *Tallman* v. *Treasurer*, 12 Ia. 534; *State* v. *Savage*, 91 N. W. 716. "It is entirely competent to provide for the assessment of any mere possessory right in lands, whether they are owned by the government or private individuals." Cooley on Taxation, 635. Separate estates or interests arising out of the same property may each be taxed. 27 Am. & Eng. Enc. of Law. 691. Desty on Taxation 78, says it is to be taxed to the lessee, if the legislature so enacts.

ANOTHER QUESTION.

The plaintiff contends that even conceding that its estate is a lease for years and a chattel real, the act of 1905 does not in fact tax a chattel real. We think that various parts of chapter 35, acts of 1905, amending Code chapter 29, plainly manifest an intent to tax leaseholds. Before that act chattels real were not in words mentioned for taxation; but such estates of vast value and large number, in which persons and corporations had invested hundreds of thousands of dollars of working capital or investment, not before existing, had come into existence, constituting large estates not taxed, and this fact itself tells us what must have been the purpose of the legislature in its amendment in 1905 of the prior law, as

well as in the reassessment act of 1904, and we must in con-
struing the new legislation let that fact, the presence of these
large interests, shed light on the intent.   But take this new
act, let it speak for itself, look at its features.   Section 39,
Code, chapter 29, before 1905, read thus: "Whenever any
person becomes the owner of the surface and another or others
become the owner of any other freehold estate in coal, oil,
gas, or limestone, fireclay or other minerals or other mineral
substances in or under the same, the assessor shall assess such
respective estates to the respective owners thereof."   So read
the assessment act of 1904, p. 45.   But this section was not
satisfactory.   The act of 1905 amended it by striking out the
word "freehold."   It now reads "Whenever any person be-
comes the owner of the surface and another or others become
the owners of any other estate in the coal, oil, gas or lime-
stone, fireclay," etc.   Decisions under the old law held the
separate mineral freehold included in taxation to its owner,
the surface to its owner, and held the mineral lease for years
not taxable to its owners as real estate, but that the surface
assessment to its owner covered the mineral in place; but as
just shown the act of 1905 amends the section.   It omitted
the word "freehold."   This shows an intention to tax any
estate in minerals, freehold or less than freehold, to its sepa-
rate owner.   If freehold, taxable as realty; if less, taxable as
personalty by reason of the new section 61.   The old section
defined personal property so as not to include chattels real
as seen above in its quotation.   It did not make personal
property, in terms, include chattels real; the new section
does, and moreover excludes from the meaning of "land"
chattels real.   How can it be doubted for a moment that the
intent was to tax chattels real, not as land, but as personal
property?   The new section inserts "chattels real" as coming
within the meaning of personal property and excepts chattels
real from land taxation, and new section 63, as also section
12, says that "all personal property" shall be taxed, and
hence chattels real must be taxed.   Was not something meant
by this amendment?   Section 68 requires the assessor to as-
certain "all personal property."   Old section 80 providing
how capital in trade should be reported by the owner, re-
quired the owner to report, "(a) the amount and true and
actual value of all tangible personal property used in con-

nection with such trade or business, otherwise than such as is regularly kept for sale therein." The new section added to clause (a) the words "including chattels real," thus plainly evincing a purpose to tax chattels real of a firm or individual, and tax them as personalty, which in law they have ever been. Section 108 of the prior law before 1905 prescribed a form of the personal property tax book, giving columns of different classes of personal property. It had no column for chattels real; but the act of 1905 gives them a separate heading and column in a clause first found in the act of 1905, "(pp). value of all chattels real of every person, firm, or incorporated company." Here the statute prescribes that the final act of assessment, the actual tax book against the tax payer, must charge chattels real. How can we fail to see fixed purpose to tax them?

The argument that the law provides for a return of delinquent land is without force. Cannot a tax claim be levied on a chattel real and it be sold therefor? A chattel real is personalty and saleable under execution. *Freeman* v. *Dawson*, 110 U. S. 264; 8 Enc. Pl. & Pr. 550; Donahue on Petroleum & Gas, 176; 17 Cyc. 953.

To sustain the claim that the act of 1905 does not at all tax chattels real, sections 77 and 78 are appealed to. Section 77 requires that corporations, except certain ones, shall make a report to the assessor showing the following items:

"(a). The amount of capital authorized to be employed by it;

(b). The amount of cash capital paid on each share of stock;

(c). The amount of money in hand or on deposit anywhere subject to its check or draft, on the first day of April of the current year;

(d). The amount of credits and investments other than its own capital stock held by it on said date, with their true and actual value;

(e). The quantity, location and true actual value of all its real estate, and the magisterial district in which it is located;

(f). The kinds, quantity and true value of all its tangible personal property in each magisterial district in which it is located." Section 78 directs how the items shall be entered in the tax book and then says: "The property mentioned in items (c), (d), (e), and (f), shall constitute all the property on

which any such corporation shall be liable to pay taxes.''
Upon that provision the plaintiff confidently asserts that it
was not the intention of the legislature to tax chattels real at
all or to any one.   Here we have verbal conflict with plain
provisions above given, and we must remember a rule vital
in this connection, namely, that we must consider, not sec-
tions 77 and 78 alone, but those sections along with all other
provisions bearing on the same matter.   We would say that
the omission of chattels real was due to inadvertence but for
the fact that the bill in the legislature as passed by the House
of Delegates contained the words ''including chattels real''
in clause (*f*), but they were stricken out by the Senate and
the amendment concurred in by the House.   This is held by
counsel as conclusive to prove that it was not intended to put
chattels real on the tax list at all, and certainly not those
owned by corporations.   Why, then, did not the legislature
strike out ''chattels real'' from section 61?   Why did it not
strike from section 80 clause (*a*) the words ''including chat-
tels real,'' thus charging individuals and firms not incorpo-
rated with them?   Why did it still later in the consideration
of the bill insert in section 108 charging taxes a clause read-
ing: ''(pp) The value of all chattels real of every person,
firm or incorporated company?''   This last most explicit
language flatly says that corporations shall be taxed for chat-
tels real.   Just here I would emphasize the fact that this
clause is a positive command to the assessor to put chattels
real of a person, firm or corporation on the *tax book*, as the
last act of taxation; whereas, the report under section 77 is
simply a report, only a list made by the tax payer, not bind-
ing, not so important as the act of the assessor in performing
the final act of taxation.   True, the clause of section 78 that
no other property than that specified in section 77, taken
alone, is strong; but we must get at the real purpose of the
legislature, and weigh all it has said.   It is blundering legis-
lation; but we must glean the real and final purpose.   It looks
like the legislature intended not to tax chattels real, at least
those of corporations, and later changed its mind, because in
section 80 it required individuals and partnerships to be
charged with them, and in clause (pp) of section 108 required
the assessor to charge the value of all chattels real of every
person, firm or incorporated company.   It did not go back

to harmonize sections 77 and 78 with the final conclusion, perhaps because it forgot to do so. Inadvertent omission occurs in legislation as well as elsewhere. We must allow for inadvertence when plain. It plainly appears to be inadvertence here. But aside from that we must remember another important rule of statutory construction which has forcible application in this instance. We have clash between different provisions of the same act on the same matter. How shall we cut the Gordian knot and resolve the conflict? As held in *Speidel* v. *Warder*, 56 W. Va. 602, (49 S. E. 534), on authority there cited, we must take the later sections, 80 and 108 as reflecting the real last intent of the law-makers. Section 61, including chattels real in the definition of personal property, gives confirmation to this argument. So much of the statute speaks intent to tax chattels real.

But the plaintiff claims that even if chattels real are taxable to individuals, sections 77 and 78 must exempt corporations therein specified from taxes on their chattels real. We cannot yield to a construction working such partiality, inequality and unfairness. Why exempt the property of corporations? We cannot realize that the legislature so intended. However, if it did so design, no matter how plain its language, such exemption of chattels real of corporations would be baldly unconstitutional under the State Constitution, article 10, section 1, commanding "all property" to be taxed with limited exceptions therein given. So it was held in *C. & O. R. Co.* v. *Auditor*, 19 W. Va. 438; *State* v. *Buchanan*, 24 W. Va. 362. And would it not be repugnant to the 14th amendment as denying other tax payers equality before the law? It would be arbitrary classification, based on no good reason, but against good reason. We should not give a construction to the act making it violate the Constitution. True, though the Constitution does say that all property shall be taxed, it cannot be taxed until the legislature authorizes it. *Supervisors* v. *Tallant*, 96 Va. 723; *Virginia & T. R. Co.* v. *Washington*, 30 Grat. 471. This is because the Constitution, in this respect does not act of its own vigor, without an enabling act; but there is the statute saying that all property shall be taxed, and sections 55, 80 and 108 covering chattels real, authorizing their taxation. "Exemptions can be allowed only when the language is free of doubt, not where it is

doubtful." Cooley on Taxation, 356; *Vicksburg* v. *Dennis*, 116 U. S. 665.

It is insisted that tax acts must be construed strictly, and if it is doubtful whether the intent is to levy a tax on a thing, the doubt must be solved in favor of the tax payer. *Brown* v. *Commonwealth*, 98 Va. 366; *Net & Twine Co.* v. *Worthington*, 141 U. S. 474; Cooley, Taxation, 266; *Rice* v. *U. S.*, 53 Fed. 910. As a general rule that is so; but there is another rule here fitting. The Constitution positively commands that all property shall be taxed, and we must construe the statute as meant to obey the Constitution, if its words will at all allow it, and this act has a section taxing all property, and specific language covering chattels real. If there were doubt, we must rather resolve it in favor of taxing leaseholds, and "impute to the general assembly an intent to obey the constitutional mandate, if its enactments fairly admit of such construction," in the language of the court in *Hart* v. *Smith*, 159 Ind. 182, 58 L. R. A. 949. But I see no reason to invoke this presumption, as I cannot see how the statute can, with reason, be held not to tax chattels real whether of corporations or others. It would be vastly more unplausible for us to hold them not taxable than taxable. It would defeat an intent that is plain, taking the acts all in all as to this matter.

It is suggested that the statute makes no basis or measure of ascertaining the value of chattels real, and that this argues that it was not intended to tax them. I may not go too far in saying that a court has little or nothing to do with it. Valuation of chattels real is not infeasible—it can be made. For many other subjects of taxation no process of valuation is fixed by the statute. Courts and juries assess damages in much more difficult instances. That the act does not fix the method of valuation, does not invalidate it. *Erie* v. *Penn*, 21 Wall. 492.

### CONSTITUTIONALITY OF THE TAX.

It is contended that taxing chattels real is contrary to the State Constitution because double taxation. Brief of one of the counsel for the plaintiff does not claim that double taxation is unconstitutional. Considering the vast power of taxation, the weight of authority seems to say that it is not void. "Since

the power of the legislature to tax is limited only by con-
stitutional restriction, it follows that the courts cannot de-
clare void a statute imposing double taxation unless it be
in contravention of some constitutional restriction." 27
Am. & Eng. Enc. of Law, 607.    I suppose that as our Con-
stitution says that all property shall be taxed and that the
taxation shall be "equal and uniform," double taxation is
-forbidden.  60 L. R. A. 366; *Fulkerton* v. *Bristol*, 95·
Va. 1.    Though some courts hold that even under such
clause the capital and shares in it, one the property of the
corporation, the other of individuals, may both be taxed. 60
L. R. A. 367; *Union Bank* v. *Richmond*, 94 Va. 316.    But
there is no double taxation in taxing leaseholds.    They are
distinct properties.    *Bank* v. *Comrs.*, 9 Wall 353; *Owensboro*
v. *Owensboro*, 173 U. S. 664; *Brady* v. *People*, 4 Wall, 459.
There can be several estates or interests, each property, in
a tract of land, especially can there be a chattel real
savoring of it, issuing out of it.    "Several persons may
have in one tract of land distinct interests which are the
subject of taxation, such as land and mineral rights, or land
and growing trees, or land and structures thereon."    27 Am.
& Eng. Enc. of Law, 640.    The chattel is a separate prop-
erty from the land, taking neither its title nor its soil in
itself, vested in a different person, carved out of the fee, a
particular estate distinct as a life estate.    Always has the
common law regarded it as distinct property, and of value
as property.    Is not the lease in this case a highly valuable
asset of the corporation?    Has it not a distinct property
in it alone?    Who can say that a conveyance of coal in fee
does not create a separate property, taxable as such?    Why
is not a long lease vesting the lessee with right to take coal
not a valuable separate property?    The surface owner has
lost dominion over the coal; the lessee has complete do-
minion.    Still, each has a property, taxable distinctly, if the
State elects to do so, because they are different properties,
and each one ought to pay taxes on his own property.    As
remarked above, the legislature has made chattels real sepa-
rate property for taxation.    Many instances of taxation have
been held not double, which might be regarded more so than
in this case.    In *Tennessee* v. *Whitworth*, 17 U. S. 129 the
court said:    "In corporations four elements of taxable value

are sometimes found: 1, franchises; 2, capital stock in the hands of a corporation; 3, corporate property; and 4, shares of the capital stock in the hands of the individual stockholders. Each of these is, under circumstances, an appropriate subject of taxation, and it is no doubt within the power of a state, when not restrained by constitutional limitation, to assess taxes upon them in a way to subject the corporation or the stockholders to double taxation." A tax on leasehold is not invalid as double because it is a distinct property from the land. In *People* v. *Cohen*, 31 Cal. 210, it is held that a tax on a claim to or possession of land is not a tax on the land. In many cases it has been held that the capital stock of a bank and the property in which it is invested, and the shares of stock may all be taxed. 60 L. R. A. 366.    They are regarded separate property. Do we not tax both the debt secured by a deed of trust and the land, and the vendor's lien debt and the land, one to the creditor, the other to the land owner? "Where two persons hold different interests in the same thing each may properly be taxed, as they do not hold by the same title." 27 Am. & Eng. Enc. of Law, 609; *State* v. *Moore*, 12 Cal. 56. We may tax a horse to its owner, and the debt for which he was purchased to its owner. Incomes from property are assessed apart from the property producing the income. 1st Desty on Taxation, 202; 1 Cooley on Taxation, section 30. There is no double taxation here. "By duplicate taxation in this sense is understood the requirement that one person or any one subject of taxation shall directly contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once." Cooley on Taxation, 394. "Where the same property represents distinct values belonging to different persons, the fact that each is taxed on the value which the property represents in his hands does not constitute double taxation obnoxious to the organic law of Maryland." *United States Co.* v. *State*, 79 Md. 63. That suits this case. But suppose we say that the charge of the land to the owner includes the lessee's interest, can the lessee say that he pays doubly? What does he pay doubly? The land owner does not pay doubly, the lessee does not. Of what has the lessee right to complain? He does not pay double tax.

He is not hurt by double tax. Double tax is where the same person is twice taxed for the same thing. 60 L. R. A. 366; Desty on Taxation, 399.

We have no doubt about the legality of the tax after the year 1905. It may be claimed to be different as to that year. The revaluation acts of 1891 and 1899 required that the minerals be considered in making up the value of land, and the taxing of lands for 1905 is under the valuation made under the act of 1899, as the revaluation of land made under the act of 1904, excepting chattels real from the valuation of land, does not apply to land taxes until after 1905. Hence the leaseholder may say: "The valuation under the act of 1899 includes minerals; they are charged to the fee owner, and if my leasehold is charged, that is double taxation." Now, the cases of *Carter Oil Co.* v. *Tyler County*, 45 W. Va. 806, and *State* v. *South Penn Oil Co.*, 42 W. Va. 80, *U. S. Co.* v. *Randolph County*, 38 W. Va. 201, only held that minerals in place should be considered in fixing value of the land to its owner, and that lessees for years of coal or oil should not be taxed with their holdings as land, and did not decide that the lessee could not be taxed with them as personalty. If the land were under coal lease, the chattel was not charged to the surface owner, which is to say that it was excepted out of the valuation, because not included. The act of 1904 does in terms except chattels real; but it is only an express direction to the assessor of what already was the law, only declaratory of existing law. Both under the reassessment act of 1899 and 1904 the surface owner is taxed with the coal in the ground, because still vested in him; there is no difference between the acts as to this. The legislature in 1905 simply taxed what never had been taxed, in taxing the leaseholds of the lessee. *State* v. *South Penn*, 42 W. Va., on page 99, says this: "What, then, is the subject matter of the act of reassessment of 1891, and does the property (these oil leases) belong to such subject matter within the meaning of the act? We may expect to find the object—the main general purpose—of the act expressed in the title. The title is 'An act to provide for the reassessment of the value of all real estate within this State.' By a statutory rule of construction, the word 'land' or 'lands' and the words 'real estate' or 'real property' include

land, tenements and hereditaments, and all rights thereto and interest therein, except chattel interests, unless a different intent on the part of the legislature be apparent from the context.    See Code, chapter 13, section 17, par. 15.    In the assessment law the term 'property' is used not in the sense of the right of ownership, but of the thing owned, which is listed for taxation opposite the name of the owner.    The context shows that oil and gas underlying the surface and within the location of land, shall be considered in ascertaining the value of such land; and when oil or gas privileges or interests are held by a party exclusive of the surface the same shall be assessed separately to such parties—the land to the one, the oil privilege to the other."    The case decided, however, that chattel interests in the land should not be charged to the lessee, and they were not charged separately to the owner.    It held that oil leases did not constitute real property within the meaning of the act, but the land was valued without respect to them.    Just so under the reasssessment of 1904.    Thus, we cannot say that the surface owner will pay or be charged with less after 1905 than for that year or any prior year.    I repeat that the leaseholds never were included in the valuation to the fee owner.

The point was suggested that article 13 of the State Constitution forfeits lands for omission from the tax books for five years, and that an omission of the land in the fee owner's name forfeits the land, and along with it the leasehold.    We do not see how this can make the act unconstitutional or how it can bear upon that point, this remote contingency. It is not to be contemplated.    It is only a risk in the future assumed by the lessee when he takes his lease.    May not the State forfeit for failure to pay taxes on the body of the land?    The State need not look out for that.    That comes from the omission of the parties interested.    A mortgage would be likewise lost.    It is the duty, not only of the surface owner, but of the owner of the particular estate, to protect his own estate from sale or forfeiture for taxes.    We assert the right, and also the duty, of the lessee to have the public officer charge the tract in the owner's name, or his own name, for self protection.    Assessment in the lessee's name would protect from forfeiture.    The lessor has made an implied covenant that he will do nothing, either of omis-

sion or commission, to forfeit or destroy his tenant's estate, and the lessee can use his, or his own, name for taxation, as an assignee can.

### FOURTEENTH AMENDMENT.

It is said, but does not seem to be urged by one of the plaintiff's attorneys, that the statute taxing chattels real violates the 14th amendment. Wherein we are not very clearly told. It cannot be claimed that tax laws are not due process of law. *King* v. *Mullen*, 171 U. S. 404; *State* v. *Sponaugle*, 45 W. Va. 415; *Witherspoon* v. *Duncan*, 4 Wall. 210. Does it deny equal protection of the law? Does not the act treat all persons owning chattels real alike? There surely may be taxes imposed by a state on different subjects. The right to the equal protection of the laws is not denied by a state when the same law or course of proceeding would be applied to other persons under similar circumstances and conditions. *Tinsley* v. *Anderson*, 171 U. S. 101. In many cases, such as tax laws, the legislature may classify persons and things in the administration of government. It does not follow that because one man of a class is treated differently from one of another class that the equality clause of the amendment is violated. "It only requires the same means and methods to be applied impartially to all constituents of a class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." *Kentucky Railroad Tax Cases*, 115 U. S. 321. Under *Magoun* v. *Illinois*, 170 U. S. 283, and other cases, the state may classify subjects of taxation and apply different methods of valuation and taxation. The amendment prescribed no rigid equality, but permits to the descretion and wisdom of the state a wide latitude. With its impolicy the federal power has no concern. It may tax one kind of property in one way and by one process of valuation, another in another, because they do not belong to the same class. In this case the land and the chattel real are separate. It may tax one class of persons in one trade in one way, another in another. *Bell's Gap Co.* v. *Pennsylvania*, 134 U. S. 232; *Atchison* v. *Mathews*, 174 U. S. 596; *Florida Central* v. *Reynolds*, 108 U. S. 471. The last case fully sustains this view in a review of the cases. See *Coulter* v. *L. & N. R. Co.*, 25 Sup. Ct.

344. In this case where is the discrimination? All chattels real are taxed alike, and valued alike. No different process of even valuation prevails as to them from other chattels. The act taxes all personal and real property. The state may tax some, exempt others, if not forbidden by its Constitution. *King* v. *Mullin*, 171 U. S. 404. *Home Insurance Company* v. *New York*, 134 U. S. 504, reiterates the great powers of a state in taxation. But this act taxes all persons, all property alike. This illustration is put by counsel. A owns tracts B and C, coal land of equal value, each two hundred and fifty thousand dollars. One is leased, the lease worth $125,000.00. Counsel says that both must be assessed equally, and he assumes that the owner must be assessed $250,000.00 on each, and that this includes the leasehold in one tract, and charging the lessee is double. But he assumes that both must be assessed to the fee owner at equal value. Cannot the value to him of the tract encumbered by the lease be lessened so far as its value is lessened by the encumbrance or servitude created by the lease? In oral argument was put the case of a man owning two tracts. One tract he operates himself for coal, the other over the creek is operated by a lessee. If the lessee is charged with his leasehold, on the right to mine coal, and the other on the fee, not on his coal operations, here is discrimination, The answer is that one holds a fee, and his mining is under no separate right; the other, the lessee, has a separate distinct taxable property. This statute does not forbid the subtraction in valuing the estate of the owner in the leasehold tract of the encumbrance of the leasehold, if in fact it lessens the value, nor does it forbid the state, if it chose, taxing the owner mining in the tract which he operates. The state may tax a life estate and the reversion or remainder as regards the amendment. *Billings* v. *Illinois*, 23 Sup. Ct. 272; *Orr* v. *Gilman*, 183 U. S. 278. See *Copper Co.* v. *Scherr*, 50 W. Va. 533.

In this connection I again ask how is there any double taxation to this plaintiff? A single illegal taxation is not double. If the lessee be charged once, how does he pay double. And the lessor owning the fee is not taxed double, and if he were, how can the lessee say that his own pocket is injured. It cannot be said that the amendment

is violated, and for this reason, as also the reason given above, that is, that the leasehold is a separate independent estate.

A statute is presumed to be constitutional. We must be very, very clear that a state law imposing taxes to support the existence of the state is void because repugnant to the Constitution, before holding it void. The Supreme Court of the Nation has always shown a great and commendable reluctance to invalidate such statutes. It has not made the 14th amendment a weapon for assailing state power on a subject in which the state power is as wide as that of taxation to support its own existence. We cannot forget, we cannot be blind to the fact that vast values in coal leases, in which millions and millions of dollars are invested, have in the past contributed nothing to the public treasury. The state claims in this case that the value of leaseholds in minerals in this State rises to the enormous sum of $200,000,000. These coal operations have, in the main, come to us within the last decade, or largely so. In years past, the matter was not of so much consequence. Under the circumstances the legislature has chosen to think that this condition of things called for the new legislation involved in this case. We cannot forget that great agitation and discussion before the people of the state has recently prevailed upon the subject of their taxation. It has been widely asserted that they have not helped to bear the burden resting till then on other shoulders. This long and warm agitation is part of the history of the state. So warm was this agitation that the legislature appointed a special commission to revise the tax laws. New acts were adopted at an extra session in 1904, and in 1905 a new act for assessing taxes was made to cure, as we have right to say, what were regarded as defects and inequality under changed conditions in a growing state. The legislature has plainly expressed its will that these chattels real shall be taxed, and it being within the taxing power of the State, it ill becomes a court to defeat and frustrate the public and legislative will. For these reasons we affirm the decree of the circuit judge.

*Affirmed.*