JOSEPH GARTSIDE *et al.*

*v.*

JOHN J. OUTLEY *et al.*

1. MORTGAGE—*mortgagee's right of entry—whether defeated by subsequent lease.* A mortgagor can not, without the consent of the mortgagee, make a lease that will prevail against the mortgagee's right of entry, on breach of condition.

2. SAME—*entry of mortgagee terminates junior lease.* Upon the entry of a mortgagee for condition broken, he has the right to treat a lessee of the mortgagor, whose lease is subsequent to the mortgage, as a trespasser, and may bring ejectment without notice.

3. SAME—*acceptance of rent in such case, by mortgagee, creates tenancy by estoppel.* The acceptance of rent by a mortgagee, after entry, from a tenant of the mortgagor, whose lease is subsequent to the mortgage, will create the relation of landlord and tenant by the doctrine of estoppel.

4. It does not follow, however, that the tenancy thus created will be for the whole term of the original lease, and in the absence of contract operating as an estoppel for the whole term, the tenancy thus created would, by analogy to the case of a holding over after a term has expired, be deemed to be from year to year.

5. DECREES—*impeaching collaterally.* A decree of foreclosure can not be assailed collaterally for irregularities in obtaining the same, or for errors in conducting the sale thereunder.

6. CONTRACT OF LEASE—*what amounts to.* An instrument which conveys premises to the grantee for the purpose of mining coal, "so long as there is coal to mine thereon," and providing for a payment of bank rents therefor, and with a forfeiting clause in case of non-compliance with the terms of the instrument, is a lease.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

The reason urged by appellees' counsel, why the sale under the decree of the Circuit Court of the United States, was void as to persons not parties to the suit, was, that the sale was at a different time, and upon different notices from that provided for in the deed of trust. All other facts necessary to an understanding of the decision are stated in the opinion.

Messrs. WILEY & PARKER, and Mr. W. H. UNDERWOOD, for the appellants.

Mr. GUSTAVUS KŒRNER, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This is an action of ejectment, brought by the appellees to recover the possession of certain coal lands described in the declaration. They claim to be assignees of John A. Twiss, and

seek to obtain possession under a lease formerly executed to him by the railroad company.

On the 9th day of May, 1856, the Belleville & Illinoistown Railroad Company executed to Twiss a lease, or grant, of the lands in controversy, for an indefinite period, with leave and permission to take, under certain conditions specified in the grant, all the coal contained in said lands. The lease contained mutual covenants, and also a provision of forfeiture in case of non-compliance on the part of the lessee.

In March, 1853, the Belleville & Illinoistown Railroad Company executed to Marshall O. Roberts and others, a deed of trust upon all the property of the company, including the lands leased to Twiss, to secure the payment of the first mortgage bonds issued by the company.

In May, 1855, the railroad company executed to John Wilkinson another deed of trust on the same property, to secure the second mortgage bonds issued by the company.

These several conveyances were placed on record in the proper office, and whatever interest the lessee or his assignees acquired under the lease and the several assignments, were taken with notice of the prior rights of the mortgagees.

In October, 1856, the Belleville & Illinoistown Railroad Company, and the Terre Haute, Alton & St. Louis Railroad Company, were consolidated under the name of the latter company, the consolidated company succeeding to all the property and franchises, and assuming all the obligations of the former companies.

At a subsequent period, the consolidated company having failed to pay the interest as it became due on the bonds secured by the deeds of trust of 1853 and 1855, the road, together with all the property of the company, was surrendered to William D. Griswold for the benefit of the trustees. The surrender took place in the early part of 1860, and from that time on Griswold continued to operate the road for the benefit of the trustees, until 1862, when the deeds of trust were foreclosed in the United States Court for the Southern District of Illinois,

and a sale of the mortgaged property was had in pursuance of the decree of that court. Subsequently the purchasers at that sale were, by a special act of the legislature, incorporated under the name of the St. Louis, Alton & Terre Haute Railroad Company, which company now holds the fee simple title to the mines in controversy.

It will be borne in mind that at the date the present owners of the land became the purchasers, at the sale under the decree of the circuit court of the United States, neither Twiss nor any of his assignees were in possession of the premises. The lease and the several assignments, however, were of record in the proper office, and to that extent, but no farther, they had notice of the rights of the lessee and of the assignees, whatever they might be. Previous to that sale, the lease had been declared forfeited by Griswold, acting in behalf of the trustees, either lawfully or unlawfully, and possession had been taken, and a new tenant of the company placed in charge.

It is a controverted fact in the case, whether the lease had been rightfully declared forfeited for non-compliance with its terms by the lessee or the assignees, prior to the surrender in February, 1860. The right of Twiss to make the surrender is also questioned, and it is insisted that it was made for a fraudulent purpose, and through the corrupt use of money.

We are not inclined to attach much importance to these controverted facts, and for that reason we shall not inquire whether the lease was in fact forfeited for non-compliance, or whether Twiss had any lawful authority to make a surrender of the mines, or what motives may have influenced his mind in that regard.

In the view that we have taken of the case, there is one question that is conclusive of the rights of the appellees under the lease. The lease granted to Twiss was for no definite period, but was to run so long as there was coal to mine. The only limit to its duration was in the clause which provided for a forfeiture in case of non-compliance with its terms, if we

except the further fact that it would expire by its own limitation when the coal was exhausted.

It may be assumed as an admitted fact that Griswold, after he took possession of the property of the company, in behalf of the trustees under the mortgage, did receive bank rents of the lessee in possession. It is not doubted that the lease, being subsequent to the mortgage, could have no force as against the rights of the mortgagees.

It is insisted, however, that inasmuch as Griswold, acting in behalf of the trustees, after entry for non-payment of the mortgage indebtedness, did receive bank rents of the lessee in possession, that fact would set up the lease as against the mortgagees, and those claiming under them, for the entire period which the lease had to run. This is the controlling question in the case.

It is in the power of the mortgagee, on entry for condition broken, where the property has been leased subsequent to the making of the mortgage, to treat the tenant as a trespasser and bring ejectment, even without notice, or the mortgagee may elect to recognize the lessee as his tenant. The authorities all agree, in holding, where the mortgagee has entered for condition broken, and received rents of the tenant, that the relation of landlord and tenant will be created between the parties. The single act of demanding rent has been held not to be sufficient for that purpose. There must be some distinct act on the part of the mortgagee that manifests the intention to recognize the lessee as his tenant. The question of the time for which it will be considered that the tenancy is created by the fact that the mortgagee received rents of the lessee, whether for the entire period of the unexpired lease, or for only a shorter period, is a question of more difficulty of solution. The generally received doctrine seems to be, that the receipt of rents by the mortgagee will only create a tenancy from year to year, in analogy to the rule where the tenant holds over after the expiration of the lease. The doctrine proceeds upon the ground that the lease is inoperative as to the mortgagee,

and is terminated by the act of entry. The rule of the common law is well established, that the mortgagor can not, without the consent of the mortgagee, execute a lease that will prevail against the rights of the mortgagee, and it has been uniformly held that the entry of the mortgagee puts an end to the lease. *Keech* v. *Hall,* 1 Doug. 2.

Upon principle, therefore, something more is required than the mere receipt of rents from the lessee, to make valid the lease for the unexpired term, as against the mortgagee. In *Doe ex dem. Hughes* v. *Buckner,* 8 Carr. & Payne, 566, Patterson, J. held, that if the mortgagee, instead of turning out the lessee, elects to take him as his tenant, the mortgagee does not, thereby, set up the tenancy for the entire unexpired term of the lease, but only from year to year.

The case of *Thunder* v. *Belcher,* 3 East, 449, holds the same doctrine, that the receipt of rents will only create a tenancy from year to year, as between the lessee and the mortgagee. We find that these cases have been quoted by numerous text writers, and the doctrine established does not seem to be questioned. Hilliard on Mortgages, p. 235, § 231; Taylor on Landlord and Tenant, § 120; Platt on Leases, p. 171.

We have been referred to no English or American case that holds the doctrine insisted upon by the counsel for the appellees, that the mere receipt of rents from the lessee, by the mortgagee, after entry for condition broken, will set up the lease for the unexpired time. We do not see how such a doctrine can be supported on principle. It is more in harmony with the analogies of our law, to hold that it will require a special agreement, to make valid and to effectuate the extension of a lease executed by the mortgagor.

We can conceive that a case can arise where the mortgagee might be estopped by his acts from contesting the rights of the lessee under the lease. If, for instance, the mortgagee should continue to receive the rents for any considerable period, and in the meantime suffer the tenant to make extensive and permanent improvements under the terms of the lease, he will be

held to have consented to the extension of the lease. Under such circumstances, to permit the mortgagee to retract his consent, would be to practice a fraud on the lessee, and the doctrine of estoppel *in pais* would justly apply. In case the mortgagee should acquiesce in the making of improvements by the lessee, and the expenditure of money, whereby the value of the estate would be greatly increased, it would be inequitable to permit him to retract and contest the lease, or the rights of the lessee under it.

It does not appear, in this case, that any improvements of a permanent character were made on the premises by the lessee, or the assignees, after the payment of bank rents to the mortgagees in possession. Indeed, the evidence shows that there were no improvements of any considerable value made, subsequent to the payment of rents. The doctrine of estoppel *in pais,* insisted upon by the counsel for the appellees, can have no application to the facts of the case.

It is very doubtful, in any view that can be taken, whether the appellees can assert any rights as against the present owners of the premises in controversy. Neither the lessee nor any of the assignees were in possession of the premises at the date of their purchase under the decree of the United States Court. It is true, that the lease and the several assignments were upon record in the proper office, but there was no one in possession claiming any rights under the lease. The lessee himself surrendered the possession of the premises, and the assignees acquiesced in the possession of the mortgagees for a period of two years prior to the sale, and it is not until after the expiration of five years, and after the present owners had made permanent and valuable improvements, that they attempt to assert their rights under the lease in this action. It is not pretended that the present owners ever received any bank rents, or that they, in any manner, ever recognized any rights in the lessee or assignees, under the lease, or the several assignments. We are at a loss to see upon what principle the appellees can

assert any rights under the lease, as against the present owners and their tenants.

It is insisted that the decree and sale under which the present owners claim, are irregular and void. The sale can not be thus attacked in a collateral proceeding. If the appellees would avail of error, if any exists, in the foreclosure of the mortgages, or deeds of trust, or the sale thereunder, it must be in some direct proceeding instituted for that purpose.

It is insisted that the instrument entered into by the parties, is not a lease; that it conveys a higher estate. The counsel does not define the nature of the estate which he insists is created, except to indicate that the grant is in the nature of a " servitude," to which the company's land was subjected for an indefinite period. We think the fair construction to be given to that instrument, is, that it is in the nature of a lease, and creates only the relation of lessor and lessee. If, however, it can be said that it conveys the fee in the land, with a perpetual reservation of rent, we do not see how that view could aid the claim of the appellees. It would appear to us that if such an estate passed, the foreclosure of mortgages, and the sale thereunder, would terminate absolutely and forever all rights of the grantee and his assignees.

In the event that such a construction could be given to the instrument, a very grave question would arise, whether the trustee in possession, by any act of his, could encumber the estate to the prejudice of the *cestui que trust.* This question has not been argued by counsel, but upon first impression we should be inclined to hold that he could not.

In no view that we have been able to take of the case, can the appellees recover against the present owners of the land and their tenants, and if another trial shall be had on substantially the same evidence, it will be the duty of the court to instruct the jury to find for the appellants. *Storing* v. *Onley,* 44 Ill. 123.

This view of the law renders it unnecessary to discuss the other questions raised by the counsel on the record.

It was error in the court not to award a new trial, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*