Dayis, J.,
delivered the opinion of the court:
During the summer of 1875 the Postmaster-General inspected the post-office in Chicago, and directed the postmaster to use-some unoccupied rooms in the Honoré block, of a part of which the Government was then a tenant, as set forth in the findings in another action betwéen the same parties tried with this.. *192 The postmaster obeyed this direction, and used tbe rooms (which were in an unfinished state) for a “ mail-bag repair department” from July, 1S75, to May, 1878. The owner, Mr. Honoré, asked payment for this occupancy when the rooms were first taken, but the postmaster announced that he had no authority to make it, but would refer the matter to the Department. This he did, and nothing more was done until December, 1877, except that Mr. Honoré made one subsequent request for an allowance. The defendants, every quarter, for two years and a half, paid the rent at the rate ($20,000) agreed upon in the original letting, and received receipts therefor. Nothing was said by Mr. Honoré, so far as is shown, about an additional sum being due for these rooms, except in the two instances already mentioned, and the claimants, who were assignees of the rents, do not appear to have made any claim whatever upon the Department until December 31, 1877, five months after purchasing the premises at a foreclosure sale, when they presented an account for rent of the rooms for two years and one-half, at $5,000 per annum.
All of this claim antedating July, 1877, when the claimants obtained title to the building, is now abandoned, and rent is claimed only from July 31, 1877, to March, 1878, when a new arrangement was concluded.
The agreement with Honoré was very vague as to the amouut of space to be occupied for the $20,000 rental, but the findings show that a certain portion designated by the defendants’ special agent was specifically set apart and agreed upon, and there was a further understanding that the Government was not to be strictly confined to the enumerated rooms, but if these were found insufficient for the needs of the service a reasonable addition of other rooms would be made without increase of rental. Whether the taking of the rooms in question was a reasonable addition can only be inferred from the acts of the parties. Mr. Honoré did not press the matter, for he allowed nearly a year to pass before he wrote that the rent agreed upon (the $20,000) did not include these rooms, and that he should receive an additional allowance. With that letter he seems to have stopped appeal to the Department, although he remained another year the owner. The claimants, as assignees of the rent, did absolutely nothing, so far as appears, either directly or through their assignor, until December, 1877, and yet meantime, and *193 after tlieir purchase of the premises, other negotiations had taken place for the renting to the Government of additional accommodation, when two rooms on the first floor were taken at an annual extra rental of $2,500. It would not have been unnatural for the claimants during that negotiation to have at least alluded to, if not to have pressed, their claim for back rent of the mail-bag repair rooms, but they did not. It is not a strained conclusion that the parties thought the addition of these rooms permissible and covered by the $20,000 rent, and that the payment of this sum in gross for an unliquidated demand for the occupation of rooms not clearly defined in number was a payment in full.
The account rendered in September, 1877, strengthens this assumption, for it contains no allusion to any other demand than that set forth, to wit, for the proper proportion of the $20,000 rental, and is stated to be for “quarter’s rent of post-office in new Honoré block,” not for a part of the post-office, not for some of the rooms therein, but for the post-office. That this was not merely carelessness is shown by the next account rendered after two additional rooms had been rented, and which is for quarter’s rent of post-office, and also in a separate item “for quarter’s rent of rooms for registry department.”
Claimants were not parties to the original letting, and, upon entry under the referee’s deed, had a right to-disregard the arrangement made with Honore. (Gartside v. Outly, 58 Ill., 210.) Instead of that they permitted the tenant to continue under the lease, which we have decided was one from year to year, and presumably gave for the rental paid the same space as that agreed upon with Mr. Honoré; they certainly, under the circumstances of this case, can claim no rights in that regard superior to his. For two years the Government had paid nothing additional for this mail-bag repair department, and during that time does not appear to have been seriously pressed in that regard; this the claimants, who had regularly collected the rents as assignees thereof, must have known, yet for five mouths after coming iuto possession of the fee, they made no demand upon the Department, although a payment of rent was made within that period, and extra space was rented, a proceeding which would naturally raise a question as to the number of rooms included in the agreement of 1874 with Mr. Honoré.
*194 At any rate the right to additional rent was a debatable one, involving two considerations: fi rst, whether the newly-occupied rooms were included in the first, letting; second, if not, whether the increase of rental was fair and reasonable in amount. All snob differences as that developed in this case are proper and natural subjects of compromise, and the findings show the following negotiations aiming at a settlement:
In January, 1878, after receipt of claimants’ demand, the postmaster in Chicago forwarded it to Washington with a statement that as the rooms had been occupied some rent should be paid for them. To this the Department answered that the amount asked was too much; but, in view of the postmaster’s statement, he might pay $800 per annum from the 1st of July, 1875. Of course this offer to pay the claimants back rent for two years before they became the owners of the premises contemplated the continued use by the Department in the future of these third-story rooms. This is made clear by the text and especially the concluding sentence of the Department’s letter telling the postmaster that if the offer be not accepted the.rooms must be vacated.
The offer was refused, and a counter-offer was made verbally to let other rooms on another floor for $800 per annum from the 1st of the preceding January. This offer was made February 18, 1878, and the Department asked that it be put in writing. This was done, but with a very material alteration, which immediately attracted the notice of the Department, viz, that the rent for the new rooms should be paid, not from the 1st of January, but from date of occupancy. Upon inquiry being made as to the reason for this change the other offer was renewed and accepted, and the rent dated from January 1,1878; that is, it antedated the contract some two months, and antedated the actual occupancy some four months and one-half. The only reasonable interpretation of these negotiations is that they effected a compromise. The Department was willing- to pay two years’ back rent if it could retain the rooms. This was declined with a proposition to change the mail-bag repair department to less valuable quarters for a certain rental, which was to be paid for two months before the offer was made. Why should the Department insist upon antedating the term unless it was understood that thereby the claimants’ demand was to be extinguished1? In. this compro *195 mise the claimants received the use of their third-story rooms, a tenant for the less available fourth-story rooms, and a sum of money for rent in arrears.
The petition is dismissed.