# CHARLESTON

BATTEN v. HOPE NATURAL GAS CO.

Submitted June 8, 1911.    Decided December 17, 1912.

MINES AND MINERALS—*Oil Lease—Suit to Cancel.*

> Decree of lower court affirmed by the concurrence therein of three judges, one of them voting to affirm for one reason and two for another. Two judges dissent and would reverse.

Appeal from Circuit Court, Harrison County.

Bill by John M. Batten against the Hope Natural Gas Company and others. Decree for defendants, and complainant appeals.

*Affirmed.*

*Davis & Davis and Osman E. Swartz,* for appellant.

*A. B. Fleming, Charles Powell,* and *Kemble White,* for appellees.

WILLIAMS, JUDGE:

John M. Batten conveyed to E. A. Batten 105 acres of land in fee, reserving a vendor's lien to secure the unpaid purchase money, and reserving also one-half the oil and gas. After the conveyance, E. A. Batten executed to the Hope Natural Gas Company a lease for oil and gas, as if he owned it all, to run for ten years, and as long thereafter as oil or gas should be produced; and the lessee covenanted to complete a well within four months, or to pay $26.25 quarterly, in advance, for delay. The purchase money not being paid when due, John M. Batten brought a suit to enforce his lien, and purchased the land at the judicial sale for less than the amount of his lien. On the 7th of February, 1908, the sale was confirmed, and a deed was executed to him on the 20th. Claiming that the rights of the

Hope Natural Gas Company, under the lease, were extinguished by the sale, he thereafter refused to accept payment of any delay rentals. On the other hand, the lessee claimed that, because it was not a party to the suit, its rights were not affected by the sale; and that Batten's action in having the delay rentals becoming payable pending the suit, collected for his benefit, by a receiver of the court, amounted to a ratification of the lease, and estopped him to deny its validity. No oil or gas has been discovered, and no entry made on the land for the purpose of prospecting. The lessee continued to deposit the quarterly rentals, becoming due after the sale, in the Empire National Bank at Clarksburg, to the credit of John M. Batten, in the manner the lease provided it might do for the benefit of its lessor. Thereupon John M. Batten brought this suit to have the lease cancelled, as constituting a cloud upon his title; and on the 9th of June, 1910, a decree was rendered adjudging that plaintiff was not entitled to the relief, and dismissing his bill; and from it he has appealed.

The decree of the lower court is affirmed, Judges POFFEN-BARGER, MILLER and ROBINSON concurring in affirmance, Judge POFFENBARGER for one reason, and Judges MILLER and ROBINSON for another. Judges BRANNON and WILLIAMS dissent, and would reverse the decree.

*Affirmed.*

Concurring Note by MILLER, JUDGE:

Bound by the rule of *stare decisis* I agree, that a lessee of an oil lease executed by a vendee is not as a general rule a necessary party to a suit to enforce a vendor's lien, and that a purchaser at the vendor's suit would take good title unencumbered by the oil lease. But like most general rules this rule is not without its exceptions.

A vendor may by his subsequent acts and conduct ratify the lease, or waive his lien in favor of such lessee, or estop himself from asserting or enforcing it against such lessee.

In this case it appears that the vendor reserved one half of all the oil and gas. The bill in the vendor's suit, and in which he became the purchaser, alleges that after the execution and delivery of his said deed the vendor, by a separate contract,

granted the vendee the right and power to collect and apply to his own use all the money paid as rental on the land, so long as the legal title thereto should remain in him, amounting to one dollar per acre per annum, payable quarterly in advance, the next quarterly payment falling due June 11, 1907. Now what was the meaning of this agreement? The vendor had reserved half of the oil and gas. By this reservation was he not entitled to half the commutation money and oil and gas rental reserved in the lease? Clearly so. But by his contract he recognized the right of his vendee to make a lease of the whole oil and gas interest and to take all the rental money so long as the legal title should remain in him. What then? By plain implication after that it was to follow the legal title, not that the lessee's rights, for which he paid and was to continue to pay under the lease should by a voluntary sale and transfer of the title by the vendee, or in proceedings by the vendor to sell the land, be thereby cut off.

That such was the plaintiff's own interpretation of his contract is plainly manifested, first, by his omission to make the lessee a party to his suit; second, by his prayer for a special receiver, to sequester the rents, and his acceptance of the rents paid by the lessee *pendente lite* into the receiver's hands, and appropriated and applied by the decree on the vendor's debt.

We think his contract and conduct amounts to a ratification and that he is concluded and estopped, now that he has acquired legal title to the land, from asserting rights inconsistent with his previous acts and conduct in reference to the lease. This conclusion I think fully supported by the following authorities cited by counsel for the appellee: 4 Am. & Eng. Dec. in Eq. 304 and note; *Mann* v. *Peck*, 45 W. Va. 18, 26; Bigelow on Estoppel, (5th ed.) 673 and 684; *Town of Ansonia* v. *Cooper*, 64 Conn. 536, 30 Atl. Rep. 760; *Matter of Peaslee*, 73 Hun. (N. Y.) 113. See, also, Platt on Leases 170, and cases cited particularly *Doe dem Whitaker* v. *Hales*, 7 Bing. 322; S. C. 5 Mo. & Pa. 132; also Jones on Landlord and Tenant, §25, page 32.

I would affirm the decree.

POFFENBARGER, JUDGE, (*concurring*) :

Our statutory vendor's lien is not a reservation of title. It is

just a specific lien upon the land. Like a mortgage, it binds particular land to the payment of a debt, but likeness in some respects is all that can be asserted. At the point of title, the resemblance fails. A mortgagee holds the legal title with right of possession on default of payment. A vendor does not. Both legal title and right of possession are in the vendee after default as well as before. Hence the possession of his tenant is rightful, but subject to loss by sale of the property in the enforcement of the lien. Obviously, therefore, the tenant has à legal interest in the property. He has a term which the law recognizes. Having such an interest, he is one of the class of persons entitled to be heard, under equitable rules and principles, in proceedings against the property affecting his interest therein. In equity all interested persons are necessary parties. Subsequent purchasers of property subject to a vendor's lien are proper and necessary parties to a suit to enforce the lien. They have a right to show the lien has been satisfied, or, if it has not, to discharge it by payment and thus protect their interests. If they are purchasers of only portions of the land, they are entitled to have the residue first sold as a measure of protection to their recognized interests. *Clark* v. *Timber Co.*, 70 W. Va. 312. Though not strictly a purchaser, the lessee in this case had acquired an interest in the property which he had a right to protect. He ought to have been permitted to show, if he could, that the lien had been satisfied or that the property would sell for enough subject to the lease to pay the debt.

Not having been made a party to the former suit between Batten and Batten, to enforce the vendor's lien, the interest of the lessee has not been extinguished. Its lease has not been sold as it might have been in that case. The present bill treats the lease as having been extinguished and obliterated by the decree and sale in the former suit and seeks cancellation thereof, not subjection to sale to satisfy the prior vendor's lien. Batten, the purchaser at the judicial sale, does not recognize any right in the lessee to pay off the balance of his debt to protect its term. Hence, it cannot be said the lessee has its day in court now. Batten does not recognize its right to satisfy the lien by way of protection of its term. He looks upon the lessee not only as having no right now as against his lien, but as never having had

any right.   He regarded himself as occupying the position of a mortgagee, who, entitled to the possession, rents, issues and profits, on default, need not notice in any manner persons claiming subsequent rights under the mortgagor.  As he was not a mortgagee and held only a lien enforcible in equity, he should have made the lessee a party to his bill and thus given opportunity to protect its term.   Of course the vendor's lien was superior to the lease.   It was prior and bound every interest in the land.   Nevertheless subsequent equities could arise conferring upon strangers the right to be heard.   *Turk* v. *Skyles*, 38 W. Va. 404; *Clark* v. *Timber Co.*, cited.   If the lessee had been made a party and failed to show any reason why the land should not be sold as a whole to satisfy the lien, and such a sale had taken place, its right under the lease would have been extinguished.

Entertaining these views, I think the court properly dismissed plaintiff's bill and would affirm the decree.

WILLIAMS, JUDGE, (*dissenting*) :

The facts are not disputed; and the record presents two purely legal questions, viz.: (1) Did the sale extinguish the lease; and (2) did the collection of the delay rentals, pending the litigation and their application to his debt, amount to a ratification of the lease by plaintiff, and estop him to deny the rights of the lessee thereunder?

Strictly speaking, an oil and gas lease is not a lease at all, although it is generally so called; it is only an irrevocable license to make exploration for those natural products, and gives right to possession of the surface only for purposes of exploring for, and producing the products, if found . After discovery and production, the right of the grantee to carry away and dispose of the product, which is a part of the very substance of the earth itself, becomes a vested right, determinable only by his failure to continue the production.   Hence, there are many incidents belonging to the ordinary lease, growing out of the relation of landlord and tenant, which do not obtain in an oil and gas lease.   But, there having been no entry upon the land for the purpose of exploration in this case, the rights of defendant are certainly no greater than the rights of a tenant under an ordinary lease.·  The lessee.had acquired no vested right to the

oil in place, and no vested interest, either legal or equitable, in the land. Therefore, the same principles can be applied in determining the rights of the defendant, as would be applied if it were the tenant of E. A. Batten.

Between lessor and lessee there is privity of estate; the tenancy depends upon the estate of the landlord, and if his title fail it necessarily terminates the lease, because the lessor is no longer landlord; and it is an elemental principle that the lessor can confer on his lessee no greater right than he possesses himself. Defendant had constructive knowledge of the incumbrance upon the lessor's title, and leased subject to the right of the vendor to enforce his lien. It must have known that the enforcement of the vendor's right might result in the loss of title to the vendee, and consequently a termination of its lease, and it took that risk. If the tenant's estate were not dependent on his landlord's title, it would be possible for a mortgagor, or vendee of land subject to a vendor's lien, to lease the land for a term of years and, by collecting the rent in advance, to materially affect, if not destroy, the value of the security. But, as early as 1778, it was held by the Court of Kings Bench, in *Keech* v. *Hall,* 1 Doug. 21, Lord Mansfield, delivering the opinion, that: "The mortgagor has no power, express or implied, to let leases, not subject to every circumstance of the mortgage." In that case the mortgagee was permitted to treat the lessee as a trespasser and recover in ejectment. The same rule is applied in this country. "A mortgagor, or his grantee, can not make a lease of mortgaged premises which will give greater rights than he possesses, and that will interfere with the rights of the mortgagee to enter for conditions broken." *Taylor* v. *Adams,* 115 Ill. 570.

"A lease made by a mortgagor subsequent to his giving his mortgage is of no validity as against the mortgagee; as to him the tenant is a trespasser, not entitled to notice to quit or to way going crops." *Howell* v. *Schenk,* 24 N. J. L. 89.

So far as it affects the question under consideration, the rights of a vendor, holding a lien for the purchase money, are not essentially different from those of a mortgagee; and it is well settled that a lease by the mortgagee is terminated by redemption; and, *vice versa,* a lease by the mortgagor, subsequent

to the mortgage, is terminated by foreclosure.  1 Jones on Mortgages, sec. 783; 1 McAdam on Landlord and Tenant, (4th ed.), sec. 72.

This question was decided by the supreme court of California in a very able and lucid opinion delivered by Justice Field in *McDermott* v. *Burke,* reported in 16 California reports.  The law is so well stated by that distinguished jurist that I quote his language at some length.  At page 589 of the report he says: "A mortgagor cannot make a lease which will bind his mortgagee, where the lessee at the time had notice of the mortgage, either actual or constructive.  The interest of the lessee in such case is dependent for its duration, except as limited by the terms of the lease, upon the enforcement of the mortgage.  So long as the mortgage remains unenforced, the lease is valid against the mortgagor, and in this State against the mortgagee; but with its enforcement the leasehold interest is determined. There is no privity of contract or of estate between the purchaser upon the decree of sale and the tenant.  The purchaser may, therefore, treat the tenant as an occupant without right, and maintain ejectment for the premises.  He cannot, for the want of such privity, count upon the lease, and sue for the rent or the value of the use and occupation.  The relation between the purchaser and tenant is that of owner and trespasser until some agreement, express or implied, is made between them with reference to the occupation.  Until then, both are equally free from any contract obligations to each other."

The following cases are also in point, viz: *Simers* v. *Saltus,* 3 Denio (N. Y.) 214; *Burr* v. *Stenton,* 52 Barb. (N. Y.) 377; *Taylor* v. *Adams,* 115 Ill. 570; *Smyrnia B. & L. Ass'n.* v. *Worden,* 5 Houst. (Del.) 508; *Haven* v. *Adams,* 4 Allen (Mass.) 80; *Howell* v. *Schenk,* 24 N. J. L. 89; *Kennett* v. *Plummer,* 28 Mo. 142; *Teal* v. *Walker,* 111 U. S. 242; *Eussum* v. *Wanser,* 53 Md. 92; *Hill* v. *Jordon,* 30 Me. 267.

It would seem to follow, almost as a matter of course, that, if the lease is terminated by the sale, there would be no occasion to make the lessee a party to the foreclosure proceeding; certainly not when he is not in possession.  *Downard* v. *Groff,* 40 Iowa 597.  Being privy to his lessor, he is as much bound by the decree against his landlord as if he had been made a party,

for privies as well as parties are bound by judicial proceedings. If defendant had produced oil or gas pending the existence of the lessor's title, it might then have been necessary to make it a party, for its right to the oil and gas would then have become vested and it could not have been divested without a chance to be heard. But it had not so much as entered on the land for the purpose of prospecting. Moreover, the bill sought no relief against the lessee, but recognized the validity of the lease, as long as the lessor's estate lasted. The vendor could not do otherwise. But recognizing the rights of the vendee's lessee as long as the vendee's title exists, is by no means an agreement to extend the lease beyond such time. No such implication arises.

The collection of the rental, pending foreclosure suit, was not inconsistent with plaintiff's present contention, as I shall presently point out. Therefore, there was no defense that defendant could make, and consequently no reason to make it a party. In *Chapman* v. *Railroad Co.*, 18 W. Va. 184, it is stated in point 1 of the syllabus that: "The general rule is, that when proceedings are had to sell the fee in land, it is not necessary to make the lessee of the land a party to the suit." In the case of *Taylor* v. *Adams*, 115 Ill. 570, it was expressly held that it was not necessary to make a subsequent lessee of the mortgagor's grantee a party to a foreclosure bill. And in 9 Enc. Pl. & Pr. 345, the general rule is stated thus: "The foreclosure proceeding terminates the lease, and it is therefore not necessary to bring the lessee into the suit as a party in order to cut off his interests." Hence, if the tenant were in possession the purchaser might be put to a separate action against him in order to get possession. But here defendant never had possession.

Did the collecting of the rent accruing before sale, by the receiver of the court, at the instance of the plaintiff, amount to an implied agreement to extend the lease, and is plaintiff thereby estopped to deny its validity? I do not think so. Plaintiff did not cause the Hope Natural Gas Company to take the lease, and has done nothing to jeopardize its interests, except to enforce his lien. He claimed no interest in the delay rentals, other than as a creditor of the lessor. He did nothing to induce the belief that, by the payment of rentals pending litigation, the lease would be extended. Defendant had bound itself to pay

delay rentals, and those that were paid before the sale were paid in discharge of its voluntary obligation to its lessor, and he got credit for them on his debt to plaintiff. At the time the rentals were collected by the receiver, there was no privity between plaintiff and it, and could not have been, for plaintiff was not the owner of the land, and could not then have known that he would become such. Not then being in a position to make a lease of the land, it follows that plaintiff could not have ratified one made by another. *McCracken* v. *City of San Francisco* 16. Cal. 591. The bill alleged the insolvency of E. A. Batten, and suggested defendant as his debtor. Plaintiff had a right to have the rental money coming to his debtor applied on his debt; and the application of it raises no implied agreement between plaintiff and the lessee that any new conditions attached to its payment. The rentals were simply paid pursuant to the original lease, and the lessor received credit for them, on his debt to plaintiff. Plaintiff had agreed with his vendee that he might receive all the delay rentals as long as he continued owner of the land. Defendant was no party to this agreement; and, so far as the record shows, had no knowledge of it. There was no duty on plaintiff to stop their payment, until he became the owner of the land; but, the lessor being his debtor, he had a right to have them collected and applied on his debt. They were so applied; and, after crediting all the delay rentals collected pending suit, the land still did not sell for enough to pay off the vendor's lien, and plaintiff was given a personal recovery for the deficiency.

The last quarterly rental becoming due before the confirmation of the sale, was for the quarter ending April 11, 1908, and was paid to the receiver on the 28th of the preceding December. The sale of the land was made on the 30th of December, 1907, confirmed on the 7th of February, and a deed was made to plaintiff on the 20th of February, 1908. Counsel for defendant insist that, inasmuch as plaintiff received the rental for a quarter which did not end until after confirmation of the sale, there was, therefore, an implied promise to continue the lease. But plaintiff could only be affected by what he received after, not before, he became the purchaser; only his conduct after he became owner of the land could have misled the lessee. It does

not appear why the rental payable on the 11th of January, 1908, was anticipated by the lessee. But it does appear that, on the 28th of December, 1907, when it was paid, plaintiff was not the owner of the land, and could not then have known that he would become the owner. That was on the day on which the commissioner first offered the land for sale, and the highest bid offered was $2,300, made by one Wm. F. West; the commissioner, not being willing to accept that bid, continued the sale to the 30th December, at which time plaintiff purchased at the price of $2,860. There was no provision in the lease for keeping it alive for a less period than three months by payment of a less sum than the amount stipulated for a whole quarter, and, hence, it was necessary to pay that quarterly rental in full, in order to preserve the lessee's rights, pending the suit. When defendant paid it he took the risk of losing the benefit of it, in the event his lessor's title failed. I admit that, if plaintiff had received any rentals falling due after he acquired title, the case would likely be different, for it seems to be the law, that the receipt of rent, by the purchaser of land subject to a lease, falling due after he becomes the purchaser, raises an implied agreement to continue the lease; and, by estoppel, creates the relation of landlord and tenant. *Gartside* v. *Outley,* 58 Ill. 210. But since his purchase, plaintiff has not received any rentals, and has stubbornly refused to recognize any rights in the lessee.

I think the court erred in denying the relief prayed for, and that the decree appealed from ought to be reversed, and a decree entered here giving plaintiff relief.

BRANNON, PRESIDENT:

I agree with Judge WILLIAMS.